MISSOURI VALLEY LIFE INS. CO. v. ISABEL W. DUNKLEE.

LIFE INSURANCE; *Action on Policy; Contract for, and Payment of, Premiums; "Cash Premiums."* On July 25th, 1870, the Missouri Valley Life Insurance Company insured the life of John Orson Dunklee for the benefit of his wife Isabel W., in the sum of $5,000. At the time of said insurance, and up to the time of the death of said John Orson Dunklee, he was a special agent in the employ of said insurance company. He collected large sums of money for them, paid the same over to them, and received commission thereon for his services. The company kept an account with him, and on two or more occasions charged him with the amounts of the premiums coming due on his insurance policy, and deducted the same from the amount of his compensation, although at the time the company so charged him he was owing the company about the sum of $1,318.28. After this, and while he was in such employment, said insurance company, by its president and agent did, in the first part of January 1872, promise said John Orson Dunklee and said Isabel, that said defendant would charge said John Orson Dunklee with the amount of the premiums in said policy mentioned, as the same should thereafter become due, and in consequence of which promise said John Orson Dunklee continued in the employment of and to serve said defendant as such special agent until his death; and in consequence of such promise, and upon the faith thereof, said Dunklee deceased did not pay the quarterly premiums

which came due on the 25th of January 1872, and on the 25th of April 1872, in money; but said company did not charge said premiums against said Dunklee upon its books. On May 5th 1872, said Dunklee died, and afterward this suit was brought by his widow, said Isabel W. Dunklee, to recover the amount of said policy: *Held*, That said contract with the president of the company is not void, although there is a clause in the by-laws of the company providing that "all premiums shall be payable in cash;" and further held, that the present action of the plaintiff may be maintained.

## Error from Leavenworth District Court.

ACTION by *Isabel W. Dunklee* on a policy of insurance issued by plaintiff in error on the life of her deceased husband. Defense, that the quarterly-premiums due in January and April 1872 were not paid when due, and never had been paid. The assured died in May 1872. Trial at the March Term 1874. A special verdict was returned, and is copied in full in the opinion, *infra*. Judgment for the plaintiff for $5,239, and costs, and the *Insurance Company* brings the case here on error.

*T. A. Hurd*, for plaintiff in error:

1. Section 3 of the charter, set out in full in the special verdict, expressly provides that all premiums are payable in cash. Sections 4, 5 and 6 prescribe the duties of the president, vice president, and secretary. It nowhere appears in said sections, or by the charter and by-laws, that Mackay was authorized to make the contract found by the second finding of the verdict; but on the contrary, they all show that he had no such authority. Section 6 provides that the secretary shall collect and receive all moneys of the company. No renewal-receipt was issued; and without it the policy could not by its terms be continued in force. The sections found, and the whole of the charter and by-laws, show, that Mackay had no authority to make the contract that the jury have found he did make. The sixth finding is that Dunklee had copies of the charter and by-laws and knew the terms and provisions thereof; the jury also found that he was an agent of the company. Dunklee then knew, when Mackay made the

promise or agreement found by the jury, that he had no authority to make it, and that the company was not bound by it. He also knew that by the terms of his policy it would lapse on January 25th 1872, unless he paid the premium due, *in money*, before that day. Mackay never reported his action to the company, and the policy was canceled on defendant's policy-register on January 25th 1872, for nonpayment of quarterly-premium due on that day. Mackay's act did not bind the defendant: 2 Penn. St. 318; 1 Met. (Ky.) 550; 4 Bibb. 17; 5 Denio, 567; 14 Mass. 62; 17 Mass. 1.

2. It was alleged and proved that Dunklee was and for a long time had been an agent of the defendant. He is presumed to know Mackay's authority, and knew that Mackay was not authorized to change the agreement between him and the company, or waive the payment of his premiums in money. He was not in a position to rely upon any implied authority on the part of Mackay. 14 Barb. 358; 19 N. Y. 207; 3 Metcalf, 306; 3 Duer, 241; 13 Gray, 73; 20 Vt. 425.

3. We contend that the action of the court and jury, as shown by the record, is unwarranted in law, and on the part of the court is such an abuse of discretion as the statute intends to guard against; and that the interview between the court and jury plainly shows, that, by reason of prejudice on the part of the jury the defendant did not have a fair trial. A new trial should be awarded for that reason, and because of the actions and rulings of the court.

The court discharged the jury without requiring a finding upon all the material questions of fact in the case. We insist that the defendant was entitled to a finding upon all the questions of fact stated in its proposed verdict, including the question of deceased's intemperance.

*Clough & Wheat*, for defendant in error:

There is nothing in the verdict or the company's charter which limits the general power of the president; and we claim that the insurance company, and its president, could lawfully waive the payment of the premiums in *cash*, and

accept payment thereof in *labor* and *services*, performed or to be performed, and that therefore said agreement was binding and obligatory on the company. 11 Kas. 533, 549; 25 Conn. 542; 27 Wis. 372; 1 Denio, 516; 5 Lansing, 71; 18 Ill. 299; 44 N.Y. 276; 97 Mass. 144; 9 Blatch. 234; 19 La. An. 214; 26 Iowa, 10; 33 Penn. St. 221. See generally Bliss on Life Insurance, §§ 273, 274, 275, 298, 303, 307. And such new agreement could be in parol: 5 Lansing, 71; 2 Kas. 347; 18 How. (U. S.) 318; 19 N.Y. 305.

John Orson Dunklee was not agent of his wife, and could not cancel the policy, or release the insurance company therefrom by his consent, or by contract between him and the insurance company. Laws of 1871, p. 248, § 77; 34 Conn. 313; 26 N.Y. 9.

The court did not, as we understand the case, rule out any evidence tending to show that John Orson Dunklee was intemperate before or when the policy was issued. And as there is no pretense that the company paid or tendered in payment to Mrs. Dunklee the amount of the surrender value, (the existence of which surrender value was affirmatively shown by the evidence,) which, by the terms of the policy it had to do before it could take advantage of Dunklee's becoming intemperate *subsequent* to the time when the policy was issued —and as there was no evidence that Dunklee was intemperate when the policy was issued, therefore there was nothing to submit to the jury involving the "temperance" or "inebriate" question.

The opinion of the court was delivered by

VALENTINE, J.: Injustice may have been done to the plaintiff in error in this case by the judgment of the court below, and yet we do not think that the injustice could have originated from any ruling of that court. If injustice was done, it was caused by the false testimony of the plaintiff below, (defendant in error,) and the disposition of the jury to find everything in favor of the plaintiff below, and everything against the defendant below, whether there was

sufficient evidence, or indeed any evidence, to support such finding or not. If the court below had allowed the jury to find as the jury desired to find, the verdict would have been much worse for the plaintiff in error than it in fact is. The court however would not allow the jury to find against the defendant below where the evidence was all in its favor, unimpeached and uncontradicted. It was only where the evidence was contradictory and conflicting that the court allowed the jury to find (as they desired to find) in favor of the plaintiff below, and against the defendant below. Now taking the findings of the jury to be true, and we do not think the court below committed any error that would authorize a reversal of the judgment. The findings of the jury in connection with the admitted facts we think sustain the judgment. The findings are as follows:

(*Title.*) We, the jury, find the following facts, and this is our special verdict in this action:

1st. The plaintiff, Isabel W. Dunklee, mentioned in the policy sued on in this action, was the wife of said John Orson Dunklee at the time of his death, and at the time the said policy was executed; is the person mentioned in said policy as the beneficiary thereof. The said John Orson Dunklee died on the 5th of May 1872, and the defendant in this action, and its officers and agents knew and had due notice of said death on the 6th of May 1872; and on the 31st of January 1873 the said plaintiff again gave notice, and furnished proof to said defendant of the death of said Dunklee.

2d. The first six quarterly-premiums of $30.90 each in said policy were paid to said defendant, and credited on its policy-register as having been paid. Said John Orson Dunklee was a special agent of said defendant from the time said policy was made and executed to the time of his death, during which time he was in the employ of defendant for compensation by it to be paid to him for his services, and while he was in such employment, the said defendant, by H. D. Mackay, its president and agent in that behalf, did in the first part of January 1872, promise said John Orson Dunklee and said plaintiff, that said defendant would charge said John Orson Dunklee with the amount of the premiums in said policy mentioned, as the same should thereafter become due, and in consequence of which promise of said defendant said

John Orson Dunklee continued in the employment of and to serve said defendant as special agent, until his death; and in consequence of such promise, and upon the faith thereof, said Dunklee deceased did not pay the quarterly-premiums which came due on the 25th of January 1872, and the 25th of April 1872, in money; but said company did not charge said premiums against said Dunklee upon its books. We find that said Mackay had the right and authority to make the aforesaid agreement with the assured and the plaintiff, unless the court shall be of opinion that his action was unauthorized and void, in consequence of the terms and provisions of the constitution and by-laws of the company relating thereto, which are as follows, viz.:

"Sec. 3. All policies issued by this company are non-forfeiting, and all premiums shall be payable in cash. In case any policy-holder shall omit to pay any premium due from him to the company, or violate any other condition of the policy of insurance, the board of directors may forfeit his policy, except that when said violation is neglect to pay premiums and that only. In such case the company shall issue such paid-up policy as is provided for by the original policy. The company may issue paid-up policies to its policy-holders for such proportion of the same as premiums paid will warrant, upon such basis as the company may from time to time adopt; or the company may, in lieu of issuing paid-up policies of insurance, or declaring the same forfeited as above provided, continue the same in force beyond a certain period to be determined as follows, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be ascertained according to the combined experience, or actuaries' rate of mortality, with interest at four-and-one-half per cent. per annum. After deducting from such net value any indebtedness to the company, held by the company against the assured, four-fifths of what remains shall be considered as a net single premium of temporary insurance; and the term for which it will insure shall be determined according to the age of the party at the time of the lapse of premium, and the assumptions of mortality and interest aforesaid.

"Sec. 4. It shall be the duty of the president to preside at all meetings of the stockholders and directors; to exercise a supervision and superintendence over all the business and affairs of the company, and to report in writing, in a book to be kept for that purpose, at each meeting of the board of directors, the true condition, standing and affairs of the company; he shall have the safe-keeping of the seal and the attested charter of the company, and with the written consent of the finance committee may transfer stocks and other property held as investments or owned by the company; acknowledge deeds and other papers, satisfy mortgages, make and call in investments. He shall sign all policies, statements, contracts, and other papers necessary and proper for the interests of the company; and, with the secretary, issue all policies; and with the general agent and executive committee, establish agencies for insurance, and appoint agents therefor, at such places as the president, general agent and executive committee shall deem for the best interests of the company, and shall be *ex officio* chairman of the executive committee, finance committee, and committee on death-losses, and shall devote his entire time and energies to the interests and business of the company.

"Sec. 5. The vice president shall perform the duties of president during

the absence of that officer, and in case the president ceases from any cause to act as such, the vice president shall act as president until a new president is elected and qualified. At other times he shall perform such duties, not otherwise provided for, as may be required of him by the board of directors, or executive committee.

"SEC. 6. The secretary shall be the clerk of the corporation; shall attend all the meetings of the board, and its standing committees; shall keep a full and true record of all the proceedings of the board of directors, stockholders, and standing committees; shall keep a record of every policy issued, and all indorsements thereon, and shall sign all policies and premium receipts, and, with the president, issue the same; and shall sign or countersign all papers when required by the board, or required to be signed by him by these by-laws, or by the statutes of the state; shall collect and receive all moneys due the company, or collected on its account, and forthwith pay the same over to the treasurer, and take and preserve his receipt therefor; and keep, subject to the order of the finance committee, all the securities and money-documents of the company. He shall have the charge and supervision of the books of accounts; see that just, true and correct cash and other suitable books are kept; particularly of all moneys received, drawn, or disbursed; for what, and of whom received; for what, and to whom paid; and of all money, demands, securities, assets, accounts, and property, necessary to a clear and distinct exhibition of the affairs, standing, and business of the company, which shall at all times during business hours be open to the examination of the board, or any director thereof; to give notice of all meetings of the board, and to perform such other duties, not inconsistent with the duties of his office, as may be required by the board of directors, the president, or any of the standing committees of the company; and he shall also, with the assistance of the president and actuary, prepare and cause to be filed at the proper places all such statements, accounts and reports as are or may be required by the laws of the United States, or of any state in which the company may do business; and shall perform generally all the acts ordinarily pertaining to the office of secretary of like companies. In the absence of the secretary, the assistant secretary shall act as secretary. When the secretary is not absent the assistant secretary will perform such clerical duties as may be required of him by the secretary. The secretary and assistant secretary shall each give such bond as may be satisfactory to the finance committee, for the faithful discharge of their official duties."

3d. In the month of May 1873 said plaintiff, by Clough & Wheat her agents, demanded payment at the office of said defendant in the city of Leavenworth for the amount of the policy mentioned, which payment was refused, and has not since been paid.

4th. The aforesaid policy had, at the death of John Orson Dunklee, a surrender value.

5th. Said policy was not canceled on the 25th of January 1872, nor on the 25th of April 1872, nor at any other time; nor did said John Orson Dunklee ever consent, contract or agree that said policy had been or should be canceled or lapsed.

6th. The said John Orson Dunklee had copies of the charter and by-laws of the said defendant, and was acquainted with the terms and provisions thereof.

7th. The defendant paid the plaintiff Mrs. Isabel W.

Dunklee money at various times from 1st of January 1872 to the 1st of April 1872, on account of the said John Orson Dunklee's salary.

8th. If on the foregoing facts the plaintiff is entitled to recover, then we find for her, and assess her damages against said defendant at the sum of $5,239.

JAS. S. CROW, *Foreman.*

We do not think that the contract between Mackay and the Dunklees was void, although the by-laws of the company required that all premiums should "be payable in cash." The payment provided for by the contract was substantially a payment in cash. Dunklee was at the time collecting large sums of money for the company. He paid such sums over to the company, and received his commissions and fees for his services therefrom. The company kept an account with him. And it would not be strange, that the company should charge him with the amount of his premiums as they became due, and should deduct such amounts from his said compensation. This is just what the company in fact did with reference to certain of the premiums which the company admit were in fact paid. The last two premiums, which the company admit were paid, were paid in that way, although Dunklee was then owing the company about the sum of $1,318.28. Said policy was for the sum of $5,000, was issued July 25th 1870, on the life of said John Orson Dunklee for the benefit of his wife, said Isabel W. Dunklee. The premiums were payable quarterly, and each premium was for the sum of $30.90.

There are some other questions in this case, but there are none that merit discussion.

The judgment of the court below will be affirmed.

All the Justices concurring.