The Home Insurance Company *v.* Gilman, Executor, *et al.*

No. 12,930.

THE HOME INSURANCE COMPANY *v.* GILMAN, EXECUTOR, ET AL.

INSURANCE.—*Joint Action on Policy.—Mortgagee.—Judgment.—Practice.*— Where a policy of insurance, issued to the owner of a building, provides that the loss, if any, shall be paid to a mortgagee "as his interest may appear," such mortgagee and owner may, in case of loss, where the amount of insurance exceeds the sum secured by mortgage, maintain a joint action against the insurance company, and are entitled to have the judgment fix the amounts due to each respectively.

SAME.—*Policy.—Principal and Agent.—Payment of Premium.—Estoppel.— Fraud and Mistake.*—Where a duly authorized agent of an insurance company delivers a policy of insurance, which acknowledges on its face that the premium has been paid, such acknowledgment concludes the company from thereafter denying the payment of the premium for the mere purpose of assailing the legal existence of the policy, unless the same was procured by fraud or through a mistake.

SAME.—*Waiver of Payment of Premium.*—The agent of an insurance company, authorized to deliver policies and receive payment, may waive the payment of the premium in cash, notwithstanding a stipulation in the policy to the contrary, and, in the absence of bad faith and collusion, a policy so delivered is enforceable.

SAME.—*Contract.—Authority of Agent.—Premium.—Payment of.*—The agent of an insurance company, authorized to deliver policies and receive payment, issued and delivered a policy of insurance, there being an agreement between him and the assured that the amount of the premium fixed should be credited upon his individual indebtedness to the latter, which was done. The agent made report of the policy, and transmitted the amount of the premium to the company in due course, which the latter received and retained until suit was brought, when it tendered the same to the assured. In an action upon the policy, *Held*, that in the absence of fraud the company is liable.

SAME.—*Pleading.—Complaint.—Ownership of Property Insured.*—In an action against an insurance company upon a policy of insurance, where the complaint alleges the plaintiff to be the owner in fee simple of the property destroyed, and the evidence shows that he held an executor's deed thereto, under which he had in good faith taken possession, the insurance company can not by way of defence attack such conveyance by questioning the power of the executor in that regard.

From the Newton Circuit Court.

*B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellant.
*S. P. Thompson* and *J. W. Oswalt,* for appellees.

MITCHELL, J.—A policy of fire insurance was issued to George Sapp, the alleged owner of a store building, stipulating for insurance against loss or damage by fire to the amount of fifteen hundred dollars.

The policy contained the following stipulation : " Loss, if any, under this policy, payable to W. W. Gilman, executor of the Reynolds estate, as his interest may appear."

The complaint alleged that at the time the policy was issued, to wit, on the 14th day of February, 1885, as, also, when the property insured was destroyed by fire—February 16th, 1885,—Sapp was the owner thereof, in fee simple, and that Gilman held a mortgage thereon to secure a debt due him from Sapp, amounting to nine hundred dollars. It also alleged that the amount of the loss exceeded the amount of the debt due Gilman. The appellant contends that Sapp and Gilman can not maintain a joint action on this policy, and hence that the court erred in overruling the demurrer to the complaint.

The learned court below was of opinion that an action might be so maintained, and, after hearing the proofs, rendered judgment " that the plaintiffs do have and recover of and from the defendant the sum of $1,537.51, and that of said sum William W. Gilman, as executor of the estate of Henry Reynolds, deceased, shall first recover the sum of $949.51, and the plaintiff George R. Sapp shall recover the residue."

The question is thus presented, whether after the loss Gilman and Sapp had such a joint interest in the policy as entitled them to join as plaintiffs in an action thereon ?

Section 262, R. S. 1881, provides that "All persons having an interest in the subject of the action, and in obtaining the relief demanded, shall be joined as plaintiffs, except as otherwise provided ; " and by section 269 of the code it is en-

acted that "Of the parties in the action, those who are united in interest must be joined as plaintiffs or defendants," etc.

Section 568 provides that judgment may be given for or against one or more of several plaintiffs, or for or against one or more of several defendants, and that the "Judgment may, * * when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves."

These statutes must be deemed to have modified the extremely technical and arbitrary rules of the common law, in respect to parties and the rendition of judgments. Their effect is, substantially, to adopt the equitable rules of the chancery courts in regard to these subjects, and they require the application of those rules to each case as it arises, whether it be of a legal or equitable character. *Tate* v. *Ohio, etc., R. R. Co.,* 10 Ind. 174; *Goodnight* v. *Goar,* 30 Ind. 418; Pom. Rem., sections 200, 215; 1 Works Pr. 98, 99.

At the common law it was essential that all those who appeared on the record as plaintiffs should have an interest in the whole of the recovery, so that a judgment *in solido* could be rendered in favor of all the plaintiffs, as, also, against all the defendants.

This rule, never founded upon any substantial reason, has been modified by the provisions of the code already referred to. *Moyer* v. *Brand,* 102 Ind. 301, and cases cited.

While it has often been decided, under the code, that all persons who join as plaintiffs must have *an interest* in the subject of the action, and that it is necessary that they be united in interest (*Dill* v. *Voss,* 94 Ind. 590; *Faulkner* v. *Brigel,* 101 Ind. 329, and cases cited), it does not follow that the interest of all must be equal, or that their interests may not be legally severable. It is, of course, not meant that two or more persons having separate causes of action, although they arise out of the same transaction, and be against the same defendant, may nevertheless unite in the same action. Where, however, there is, as was said in *Tate* v. *Ohio, etc.,*

*R. R. Co., supra,* "one common interest among all the plain-tiffs, centering in the point in issue in the cause, the objection of improper parties can not be maintained," even though the amount of their several interests be unequal, and even though they may be entitled to several judgments, in respect to the amounts to be recovered.   All must have some common interest in respect to the subject-matter of the suit, and each must be interested that all have relief in respect to that subject-matter.   This creates such a unity of interest as entitles parties so related to a particular subject-matter to unite as plaintiffs in an action.   *Martin* v. *Davis,* 82 Ind. 38.

In the case before us both parties plaintiff had, by contract, a common interest that a recovery should be had upon the policy of insurance.   It was the interest of each that the other should recover, as well as that he should recover himself.   A recovery by the mortgagee enured to the benefit of his co-plaintiff, in that it established a common right.   The amount recovered by the mortgagee went in liquidation of the mortgagor's debt, while a recovery by the latter had a like effect upon the common right, and entitled the former to receive payment out of the sum recovered as his interest in the fund might appear.   Each was, therefore, interested in the relief sought by the other, and as both appeared upon the face of the policy to have a common interest, neither being entitled to the whole fund, it was proper for the protection of the defendant that both should be parties.   "It was not so material whether they were plaintiffs or defendants, so that their rights under the contract would be barred by the event of the suit."   *Morningstar* v. *Cunningham,* 110 Ind. 328; *Durham* v. *Hall,* 67 Ind. 123;   May Ins., section 449.

There was no error in overruling the demurrer to the complaint.

The seventh paragraph of answer set up, in substance, that the policy sued on had not been delivered or paid for except in the manner following:   It averred that two days before the fire occurred, the appellee Sapp applied to the com-

pany's agent at Goodland for insurance. It was then agreed between the agent and the applicant, that, in consideration that the latter would give the agent credit for the premium agreed upon on an indebtedness due from him to the applicant, the agent would make out and deliver a policy of insurance, covering the property, in a stipulated amount. The agent was given credit accordingly, but the policy was not delivered until after the property was destroyed by fire. The agent made due report of the policy, and transmitted the amount of the premium to the company in due course. The company, having no previous knowledge of the manner of payment to its agent, received and retained the premium until after this suit was brought, when, learning the fact, it tendered the amount to the insured.

To this answer the plaintiffs replied, that they made the contract of insurance in good faith with the defendant's agent, and that they were at the time ready and willing to pay the premium, but that payment in money was waived by the company's agent, who accepted in payment credit upon an indebtedness due the insured, and that the agent forwarded the amount of the premium to the home office in the regular course, etc.

It is contended that the court erred in overruling a demurrer to this reply.

The fact must be kept in view that the suit is upon an executed policy of insurance, a copy of which is set out with the complaint. The complaint avers that the policy was executed on the 14th day of February, 1885,—the day of its date—and that the property insured was destroyed by fire on 16th of the same month. There was a general denial pleaded with the other special answers. There was no answer of *non est factum*, nor was the seventh paragraph of answer verified. So far, therefore, as the allegations of the answer go in denial of the execution of the policy prior to the date of the fire, they are immaterial. The answer presented no issue relating to the execution of the policy. The execution of the

policy not having been denied under oath, the plaintiffs below were not bound to prove its execution. *Sperry* v. *Dickinson*, 82 Ind. 132. "Under a mere denial of any allegation, no evidence shall be introduced which does not tend to negative what the party making the allegation is bound to prove." Section 377, R. S. 1881.

The effect of the answer was, therefore, to admit the execution of the policy, as alleged in the complaint. The question, then, comes to this: Treating the policy as having been delivered at its date, was there such a payment of the premium, or such a waiver of the condition in the policy which provided that "the company shall not be liable by virtue of the policy until the premium therefor be actually paid," as that the policy attached?

The policy contains the following recital upon its face, viz.: "The Home Insurance Company of the City of New York, in consideration of thirty-seven and $\frac{50}{100}$ dollars to them paid by the insured hereinafter named, the receipt whereof is hereby acknowledged, do insure," etc.

It provides further, in effect, that, upon being countersigned and delivered by the company's duly authorized agent at Goodland, it shall constitute a valid policy of insurance. It was so countersigned and delivered, with the acknowledgment of payment therein written as above set out.

The authorities justify the statement, that where a duly authorized agent of an insurance company delivers a policy of insurance which acknowledges on its face that the premium has been paid, such acknowledgment concludes the company from thereafter denying that the premium was paid, for the mere purpose of assailing the legal existence of the policy. Insurers are estopped to deny that the contract of insurance attached, on account of non-payment, after the policy has been duly delivered and the receipt of the premium duly acknowledged, unless the acknowledgment has been procured through mistake or by fraud. *Basch* v. *Humboldt, etc., Ins. Co.,* 35 N. J. 429; *Provident L. Ins. Co.* v. *Fennell,* 49 Ill. 180; *Teutonia*

*L. Ins. Co.* v. *Mueller*, 77 Ill. 22; *National Benefit Ass'n* v. *Jackson*, 114 Ill. 533; *Kline* v. *National Benefit Ass'n*, 111 Ind. 462.

In a suit to collect the premium, or where the question of actual payment is involved, such an acknowledgment, like any other receipt, may be only *prima facie* evidence of payment; but a policy so delivered and accepted in good faith constitutes presumptively a valid contract of insurance, and the company assumes the burden of proving that it was delivered and accepted in bad faith, without payment or extension of credit, and in a manner known to the assured to be unauthorized and contrary to the usages of the company.

It is well settled that payment of the premium in cash may be waived by an agent authorized to deliver policies and receive payment, notwithstanding a stipulation in the policy to the contrary; and unless a policy so delivered is avoided by showing bad faith or collusion, it is enforceable. *Phœnix M. L. Ins. Co.* v. *Hinesley*, 75 Ind. 1.

If the insurance company has been credited with the premium in account by its agent, or if credit has been extended by the agent to the assured, or if it has, in fact, been paid to him, no doubt it is a sufficient payment to the company to support the policy. *Sheldon* v. *Atlantic, etc., Ins. Co.*, 26 N. Y. 460; *Life Ins. Co.* v. *Dunklee*, 16 Kans. 158; *Michael* v. *Nashville Ins. Co.*, 10 La. Ann. 737; *Taylor* v. *Merchants Fire Ins. Co.*, 9 How. 390; *Mowry* v. *Home Life Ins. Co.*, 9 R. I. 346; *New England M. L. Ins. Co.* v. *Hasbrook*, 32 Ind. 447; 1 Wood Fire Ins., sections 28–30; May Ins., sections 361–2–3.

" If the agent be authorized to receive the premium, an agreement between the assured and the agent, that the latter will be responsible to the company for the amount, and hold the assured as his personal debtor therefor, is a waiver of the stipulation in the policy that it shall not be binding until the premium is received by the company or its accredited agent." May Ins., section 360. *Sheldon* v. *Connecticut, etc., Ins. Co.*,

25 Conn. 207; *Home Ins. Co.* v. *Curtis*, 32 Mich. 402; *Will-cuts* v. *Northwestern M. L. Ins. Co.*, 81 Ind. 300 (309), and cases cited.

It is fairly to be inferred from the pleadings that the agent agreed, that, upon receiving credit on his account due the assured, he would be responsible to the company for the amount of the premium. Having presumably credited the amount to his company at once, and having forwarded it according to his agreement in the usual course of business, the policy can not be avoided in the absence of fraud. For all that appears, the assured was fully justified in presuming that the agent was authorized to make the arrangement disclosed. We are not required to decide what the rights of the parties would have been in case there had been no delivery of the policy (*Hoffman* v. *John Hancock Mut. L. Ins. Co.*, 92 U. S. 161; *Insurance Co.* v. *Colt*, 20 Wall. 560), or in case the agent had failed to give the company credit and remit in the usual course. The demurrer to the reply was properly overruled.

The appellant contends, lastly, that a new trial should have been granted, because the finding is contrary to law and is not supported by the evidence.

This contention rests upon the fact that the plaintiffs alleged in their complaint that Sapp was the owner in fee simple of the property insured. The proof shows that prior to the issuance of the policy, Gilman, as executor of the estate of Reynolds, assuming to act under a power contained in the will of the testator, made a deed purporting to convey the premises on which the building insured was situate to Sapp. The appellant contends that the will did not authorize the executor to make the conveyance. This was a question, however, which the insurance company could not make. Sapp, having taken a conveyance, so far as appears, in good faith, and having gone into possession, claiming to be the fee simple owner, had an insurable interest in the property. So long as those interested in the execution of the will of Reynolds are content with the deed made by the executor,

the insurance company can make no question concerning the power of the executor in that regard. 1 Wood Fire Ins., section 274.

Judgment affirmed, with costs.

