**154**

## SILVERMAN v. NEW YORK LIFE INS. CO.
### No. 6349.

United States Court of Appeals for the District of Columbia.

Argued May 15, 1935.

Decided June 29, 1935.

Rehearing Denied July 22, 1935.

Morris Simon, Lawrence Koenigsberger, Eugene Young, William H. Collins, and Louis E. Spiegler, all of Washington, D. C., for appellant.

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and John E. Larson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a judgment for the defendant in an action brought in the lower court by appellant as plaintiff to recover on a policy of life insurance.

The plaintiff, Marim Silverman, in her declaration alleged that the defendant, the New York Life Insurance Company, on April 21, 1932, issued a policy of insurance for $5,000 upon the life of her husband, Isaac Silverman, wherein plaintiff was named as beneficiary, the payment of $192.-30 to the company as the first premium thereon being acknowledged in the policy; that on May 3, 1932, while the policy of insurance was in full force and effect, the insured departed this life; that plaintiff as beneficiary duly gave proof of his death to the defendant and demanded payment of the policy; but defendant refused to pay the same or any part thereof and still refuses so to do. Plaintiff therefore claimed judgment.

By its plea the defendant admitted that on April 21, 1932, it executed a policy of insurance upon the life of Isaac Silverman in the sum of $5,000, wherein the plaintiff was named as beneficiary; that Silverman died on May 3, 1932, and that proof of his death was duly given to defendant; that plaintiff demanded payment under the policy and defendant refused to make such payment; but defendant denied that the policy was in force and effect at the time of the death of Silverman and denied that defendant became indebted to the plaintiff in any sum thereunder.

Defendant alleged that on April 19, 1932, Silverman filed a written application with defendant for insurance on his life, and the application which was signed by him stipulated among other things as follows:

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination. * * * 3. That only the president, a vice president, a second vice

president, a secretary, or the treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company, and that neither one of them is authorized to accept risks or to pass upon insurability. * * *"

That insured on the same day was examined by defendant's medical examiner; that on April 21, 1932, defendant at its New York office issued the insurance policy involved in this case, but the policy was not delivered to Silverman nor was the first premium paid thereon at a time when the applicant had not consulted or been treated by any physician since the medical examination by defendant's examiner, and therefore the policy never became a valid obligation of the defendant.

Plaintiff, by replication, alleged that the policy was delivered to the insured on April 27, 1932, and that insured was then in good health; she denied that the insured had consulted and been treated by any physician between the time of his medical examination on April 19, 1932, and the time of the delivery of the policy of insurance and the payment of the first premium thereon; she denied that the insured in any application for the policy made the agreements alleged in the plea, and denied that there was ever attached to the policy an application for such policy in which such agreements were set forth.

At the trial of the case the plaintiff introduced in evidence the policy of life insurance in question containing among others, the following provisions:

"New York Life Insurance Company, a mutual company agrees to pay Marim, wife of the insured beneficiary $5,000 upon receipt of due proof of the death of Isaac Silverman, the insured.

"This contract is made in consideration of the application therefor and of the payment in advance of the sum of $192.30, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy for the period terminating on the 31st day of March 1933, and of a like sum on said date and every 12 calendar months thereafter during the life of the insured.

"This policy takes effect as of the 31st day of March 1932, which day is the anniversary of the policy.

"The contract.—The policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this policy when issued. No agent is authorized to make or modify this contract or to extend the time for the payment of premium, or to waive any lapse or forfeiture or any of the company's rights or requirements. * * *"

There was physically attached to the policy at the time when it was so offered and received in evidence a photostat of the application dated April 19, whereby Silverman applied for the policy, and which was signed by Silverman and Taske, the soliciting agent for the defendant. The copy of the application was admitted in evidence over the objection and exception of plaintiff. The application contained among other things the following paragraphs:

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by a physician since his medical examination. * * * 3. That only the president, a vice-president, a second vice-president, a secretary or the treasurer of the company can make, modify or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company, and that neither one of them is authorized to accept risks or to pass upon insurability. 4. That by receiving and accepting said policy, any additions or amendments hereto which the company may make and refer to in question 10 above entitled 'Additions or Amendments' are hereby ratified.

"2. Sum to be insured, $3,000. Premiums how payable, Annually. Age nearest birthday, 42.

"10. Additions or amendments (for home office use only) (2) Additional policy $5,000 written on the ordinary life plan."

The plaintiff also offered evidence tending to prove that the policy was delivered to the insured by Taske, April 27, 1932, at his place of business; that at the time of the delivery Taske had an alternative policy issued by the company upon the life of decedent for $3,000 as well as the policy for $5,000; that Taske asked the insured which one he desired to accept, and the insured answered the $5,000 policy; that thereupon the policy for $5,000 was delivered to the insured and remained in his possession until his death.

In order to sustain its defense the defendant introduced without contradiction evidence of the following facts, to wit: That the policy in question was received by Taske from the company on April 25, and was delivered by him to Silverman at his store on April 27; that no payment of the first premium was made to him at that time; that on April 28 Silverman went as a patient to Providence Hospital and on the next day underwent an abdominal operation; that on May 2 while he remained in the hospital, Harry Cohen, Silverman's son-in-law, undertook to pay the first premium upon the policy by delivering his check to Taske for the sum of $192.30; that at this time Taske knew that Silverman was in the hospital following the abdominal operation, nevertheless he received Cohen's check and immediately deposited it in his bank and remitted his own check to the company for the sum of $86.-53, which was the amount of the first premium less Taske's commission; that Silverman died on the following day, to wit, May 3; that the check of Cohen which Taske had received and deposited was refused payment by the bank upon which it was drawn and was returned to Taske; that Taske redeposited the check and it was paid on May 7, four days after the death of the insured. The company also introduced evidence showing that Taske as soliciting agent possessed no authority to grant an extension of time for the payment of the first premium upon the policy, and that notice to or knowledge of Taske was not notice to or knowledge of the company. Counsel for the company stated in open court that they were not raising any question concerning the state of the insured's health on or prior to April 27, 1932.

Upon this state of the evidence the defendant filed a motion for a directed verdict which the court sustained, and judgment was entered thereon for the defendant.

In this court the appellant presents the following assignments of error:

First. That the court erred in admitting evidence as to the date of the payment of the first premium, for the reason (1) that the date of the payment was not in any manner put in issue by the pleadings in the cause; and (2) that the defendant, having in the policy acknowledged receipt of the first premium, was estopped to deny that it had received payment thereof before the delivery of the policy to the insured.

Second. That the court erred in admitting in evidence the application attached to the policy.

Third. That the court erred in directing a verdict for the defendant, appellant claiming (1) that the agent had actual, or at least ostensible, authority to deliver the policy as an effective contract without prepayment of the premium; and (2) that where the premium is charged to the agent by the company and the agent extends credit to the insured, the company is bound.

We have examined these assignments with care, but in our opinion they disclose no error in the rulings of the lower court.

It was not error for the court to admit in evidence the application which was attached to the policy. It is plain that the two instruments were understood and intended by the parties as comprising together the contract between them. It is true that the application speaks of two policies, one for $3,000 and the other for $5,000 in sections 2 and 10, supra, but it is explained by the evidence that at the time of the application it was not certain which of the two policies would be accepted by the applicant, and it is provided by the terms of the application that it shall relate to either policy. Furthermore, the plea of the defendant was based upon the alleged failure of the insured to pay the first premium at the time required by the terms of the contract. It cannot therefore be said that the date of such payment was not put in issue by the pleadings in the cause.

We have examined with care the assignment of error which charges that the defendant, having acknowledged in the policy receipt of the payment of the first premium, was estopped to deny that it had received payment thereof before delivering the policy to the insured. This question has given rise to much controversy and to

many conflicting decisions. As is said in 14 R. C. L. 969: "Some courts have held that while a recital of the payment of the premium in a policy under seal may be contradicted for other purposes, as to enforce payment of the premium, it cannot be contradicted for the purpose of avoiding the policy. Other courts, however, do not observe any such distinction, but regard the recital in the policy as a mere receipt, like any other, which is prima facie evidence of payment, but only prima facie, and which may be contradicted for any purpose."

The following authorities support the view that the recital in the policy of the payment of the first premium cannot be contradicted for the purpose of avoiding the policy: Roberts v. Security Co., Ltd., L. R. 1897, 1 Q. B. Div. page 111; 3 Kent's Commentaries (13th Ed.) p. 260; Basch v. Humboldt M. F. & M. Ins. Co., 35 N. J. Law, 429; Mutual Life Ins. Co. v. Vaughan, 125 Miss. 369, 88 So. 11; Kendrick v. Mutual Benefit Life Ins. Co., 124 N. C. 315, 32 S. E. 728, 70 Am. St. Rep. 592; Britton v. Metropolitan Life Ins. Co., 165 N. C. 149. 80 S. E. 1072, Ann. Cas. 1915D, 363; Dobyns v. Bay State Beneficiary Ass'n, 144 Mo. 95, 45 S. W. 1107; Home Ins. Co. v. Gilman, Executor, 112 Ind. 7, 13 N. E. 118; Teutonia Life Ins. Co. v. Mueller, 77 Ill. 22; Consolidated Real Estate & F. I. Co. v. Cashow, 41 Md. 59. See, also: In re Insurance Company of State of Pennsylvania (D. C.) 22 F. 109; Mutual Reserve Life Ins. Co. v. Heidel (C. C. A.) 161 F. 535.

A contrary view is expressed in Ansin v. Mutual Life Ins. Co., 241 Mass. 107, 134 N. E. 350; Baker v. Union Mutual Life Ins. Co., 43 N. Y. 283; Bostick v. New York Life Ins. Co. (C. C. A.) 284 F. 256; MacKelvie v. Mutual Benefit Life Ins. Co. (C. C. A.) 287 F. 660.

■ In our opinion the foregoing controversy is not controlling in the present case for the reason that the policy of insurance involved in this case was never lawfully delivered to the insured and never became a binding contract of the company.

The record discloses that on April 19, 1932, Isaac Silverman was examined by the medical examiners of the company; that by the terms of the application the company's agent was not authorized to deliver the policy to him except upon payment of the first premium amounting to $192.30, and then only if he was at the time living and had not consulted or been treated by a phy-

sician after the date of the medical examination by the company's examiners; that on April 27, the soliciting agent handed the policy to Silverman but no part of the first premium was then paid; that on April 28, Silverman went as a patient to a hospital and on the following day he underwent an abdominal operation there; that on May 2, the soliciting agent of the company having up to that time received no payment whatever upon the first premium due upon the policy and no payment having been made thereon to the company, received from the son-in-law of Silverman his check for the amount of the premium; that the agent then knew of the critical condition of Silverman following the operation but he gave no information of this to the company, nor did the company have any knowledge thereof; nevertheless the agent then sent to the company his own check for the amount of the payment, less his commission thereon; the agent's check, however, was refused by the company. Silverman died upon the following day, May 3; and the check delivered by his son-in-law to the agent was not paid until May 7, four days after his death. It therefore appears that the policy never became an effectual contract between Silverman and the company and imposed no obligation on the company.

In New York Life Insurance Co. v. Horton (C. C. A.) 9 F.(2d) 320, 321, it appears that on January 5, 1923, the plaintiff applied to the company for insurance and on February 6 the company sent a policy to its agent with a special instruction identical with that given to Taske in the present case, that he should not deliver the policy if the applicant had consulted a physician since the application. The agent delivered the policy on February 8, when applicant was ill with influenza and accepted the premium. The insured died on February 12, and the court held that there could be no recovery on the policy, saying:

"Evidence without conflict showed that, when Hines surrendered the policy, a state of facts then existed which deprived him of authority to deliver it. A result of uncontroverted evidence showing that the instrument sued on never became effective by an authorized delivery was that defendant was entitled to an instruction to the jury to find in its favor."

■ It is well established that an insurance company in the absence of controlling stat-

utes has a right to limit its agent's authority and to provide that knowledge of the soliciting agent concerning matters material to the risk shall not be imputed to the company. New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202.

In the following cases similar conclusions were reached by the court upon facts similar to those appearing in the present case to wit: Ætna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824; Person v. Ætna Life Ins. Co. (C. C. A.) 32 F.(2d) 459; Dodd v. Ætna Life Ins. Co. (C. C. A.) 35 F.(2d) 673; Inter-Southern Life Ins. Co. v. McElroy (C. C. A.) 38 F.(2d) 557; Jensen v. New York Life Ins. Co. (C. C. A.) 59 F.(2d) 957; Subar v. New York Life Ins. Co. (C. C. A.) 60 F.(2d) 239; New York Life Ins. Co. v. McCreary (C. C. A.) 60 F.(2d) 355; Bostick v. New York Life Ins. Co., supra; MacKelvie v. Mutual Life Ins. Co., supra. See, also, Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416; Williams v. Union Central Life Ins. Co., 291 U. S. 170, 171, 54 S. Ct. 348, 78 L. Ed. 711, 92 A. L. R. 693.

Consistently with these authorities we hold that the judgment of the lower court should be and it hereby is affirmed with costs.