### KAITLIN v. METROPOLITAN LIFE INS. CO.
### No. 757.

Municipal Court of Appeals for the District of Columbia.

March 24, 1949.

I. Irwin Bolotin, of Washington, D. C. (M. Taft Woodruff and Denver H. Graham, both of Washington, D. C., on the brief), for appellant.

John E. Powell, of Washington, D. C. (Arthur P. Drury, John M. Lynham and Laidler B. Mackall, all of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

In June 1945 the Metropolitan Life Insurance Company issued a $2500 policy of insurance on the life of Solomon Kaitlin. On February 15, 1947, before the policy had reached the two-year incontestable period, Mr. Kaitlin died. The company refusing to pay, Naomi Kaitlin, widow of the insured and beneficiary under the policy, brought suit thereon. The trial court directed a verdict against her and she appeals.

In the application for insurance there were these questions: "Have you ever been treated for, or told that you had, high blood pressure? Have you ever had any ailment or disease of (a) The Brain or Nervous System? (b) The Heart or Lungs? (c) The Stomach or Intestines, Liver, Kidneys or Genito-Urinary Organs? (d) The Skin, Bones, Glands, Ears or Eyes? (a) Have you ever had Rheumatism, Gout or Syphilis? (b) Have you ever had any form of paralysis or insanity? (c) Have you ever had Diabetes, Pleurisy or Pneumonia? (d) Have you ever raised or spat blood? If so, give full details (e) Have you ever had any Accident, Injury or Occupational Disease? (f) Have you ever had any Surgical Operation?" All of the above questions the insured answered "No." There was also this question: "Have you consulted a physician for any ailment or disease not included in your above answers?" This he also answered "No." In the application there was also this question: "What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years? If none, so state." The answer of the insured was "None."

Thus we see that the insured represented in his application not only that he had not

consulted a physician for any ailment not included among the eleven groups named, but also made the general representation that he had not consulted or been treated by any physician within the preceding five years. The undisputed evidence revealed that these statements were untrue.

The evidence revealed that he had consulted or been treated several times by three different physicians in the approximately two years before the policy was issued. The evidence showed that his family physician had referred him to a heart specialist, Dr. Dickens, in March 1943, some 27 months before the policy was issued, and that the insured complained to Dr. Dickens "that he had been suffering with pains in the chest of a squeeze-like nature, which had radiated down into his left arm" and that "those pains would come on him at night while at rest in bed, and also at work." Based on the history given by Mr. Kaitlin and on his own examination and on blood pressure readings and electrocardiographic tracings he made, Dr. Dickens made a diagnosis of hypertensive heart disease. Dr. Dickens again examined Mr. Kaitlin in August 1943 and this time the patient gave him the same history adding that he was then frequently being awakened at night, perspiring freely, and suffering from shortness of breath. Again Dr. Dickens made a physical examination of the patient and an electrocardiographic study, and diagnosed the case as one of coronary insufficiency with angina pectoris. Two months later the insured was confined to bed and while there a third electrocardiographic tracing was made. This confirmed the earlier diagnosis of hypertensive heart disease and also revealed that the damage to the patient's heart had increased since the time Dr. Dickens first examined him some five months earlier. All these findings, based on the three examinations of the patient, Dr. Dickens communicated to his family physician, but not to the patient. The family physician died before the time of trial.

A new physician, Dr. Winik, came into the case in September 1943. He testified that Mr. Kaitlin was worried about his heart and complained to him of recurring attacks of pain around the heart and said that the first of these attacks had occurred about a year before. The doctor prescribed three or more drugs, to act as a sedative, to reduce the blood pressure, and to relieve the pain around the heart. He saw and treated Mr. Kaitlin several times and in October 1943 ordered him to bed for three weeks. At that time Dr. Winik made a tentative diagnosis of coronary insufficiency. He testified that the insured had an abnormal concern about his heart and always complained of pains around the heart and was convinced that he had heart disease. Dr. Winik told him he did not have heart disease, but advised him to change his job and to find one involving less tension. This the patient did. He again consulted Dr. Winik in May 1944 and in November 1944. On these occasions the doctor told the patient to continue with the same medication he had previously prescribed. All this, it will be seen, occurred before the policy was applied for or issued in June 1945.

Thereafter the insured had a serious heart attack in January 1946 which required three weeks hospitalization. The hospital records revealed that in giving his personal history at the time he was admitted as a patient Mr. Kaitlin stated that three years before he had suffered from hardening of the heart muscles, aching sensation over precordium radiating down the left arm, and that two electrocardiograms had been taken. About a year later Mr. Kaitlin was again received as a patient at the same hospital and again made similar statements as to his heart condition. Seven days later he died of coronary artery thrombosis.

In view of the evidence we have recited the trial judge was correct in taking the case from the jury, for a verdict in favor of plaintiff could not stand. Viewing the evidence in a light most favorable to plaintiff it is clear that when the insured stated in his application that he had not consulted a physician for any ailment or disease not included in his previous answers and that he had not consulted or been treated by a physician or other practitioner within the preceding five years he was making a misrepresentation  The undisputed evidence showed that he had been treated by three physicians on several occasions during that period. We think the conclusion is inescapable that as a matter of law these

misrepresentations "materially affected either the acceptance of the risk or the hazard assumed by the company",[1] or both. In view of the plain and unmistakable evidence of misrepresentation it would have been error to submit the case to the jury. Kavakos v. Equitable Life Assur. Soc., 66 App. D. C. 380, 88 F.2d 762; Metropolitan Life Ins. Co. v. Adams, D. C. Mun.App., 37 A.2d 345, Walsh v. John Hancock Mut. Life Ins. Co., 164 Pa.Super. 184, 63 A.2d 472. Here the facts are strikingly different from those in Kaplan v. Manhattan Life Ins. Co. of New York, 71 App.D.C. 250, 109 F.2d 463, where the insured withheld the information that he had been treated for an occasional cold, and twice, some fifteen months apart, for a pain in the abdomen. Here the representations could not have been considered of a slight or temporary nature.

Appellant stresses that there was evidence to show that the insured did not know that he had heart disease and that in fact Dr. Winik had assured him that he had no heart ailment. We may assume that if the case turned on that question there would have been an issue for determination by the jury as to whether the insured had "with intent to deceive"[2] falsely stated that he had never had heart disease and had never been treated for, or told that he had high blood pressure. But there was no issue of fact as to his other answers to the effect that he had not during the named period consulted or been treated by any physician. It is clear that those answers were false and materially affected the acceptance of the risk and the hazard assumed by the company in the issuance of the policy which is here in litigation.

■ Other assignments of error relate to the refusal of the trial judge to permit appellant to show that the company's local agent knew that the insured had been receiving medical treatments. Appellant argues that such knowledge on the part of the agent constituted knowledge on the part of the company and amounted to a waiver by the company of its right to void the policy on the ground of misrepresentations. We cannot agree with this contention. The policy provided that no agent or other person except officers of the company have power to modify the policy or bind the company by promises respecting benefits; that no statement made to or by, and no knowledge on the part of, any agent pertaining to the applicant shall be considered as having been brought to the knowledge of the company. It also provided that the policy and the application constitute the entire contract between the parties and that no agent is authorized to alter or amend the policy. We have recently held that there is no question that an insurance company may thus limit the authority of an agent. Walker v. Superior Life Ins. Co., D. C. Mun. App., 62 A.2d 192, 77 W.L.R. 83, citing Silverman v. New York Life Ins. Co., 65 App. D.C. 29, 79 F.2d 154; 16 Appleman, Insurance Law and Practice, § 9162. Rulings of the Supreme Court firmly support this holding. Mutual L. Ins. Co. v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; Prudential Ins. Co. v. Moore, 231 U.S. 560, 34 S.Ct. 191, 58 L.Ed. 367; Penman v. St. Paul F. & M. Ins. Co., 216 U.S. 311, 30 S. Ct. 312, 54 L.Ed. 493; Northern Assurance Co. v. Grand View Building Assn., 183 U. S. 308, 22 S.Ct. 133, 46 L.Ed. 213.

■ Appellant also advances the argument that the trial judge improperly admitted certain hospital records, an autopsy report and death certificate of the insured's parents. This argument we need not consider. Appellant could not have been prejudiced by the admission of such records, because even without them the defendant would have been entitled to a directed verdict.

We have considered other errors assigned by appellant and have decided there is nothing in the record to warrant reversal of the judgment.

Affirmed.

---

[1] Code 1940, 35—414.

[2] Code 1940, 35—414.