# MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* HILTON–GREEN, EXECUTORS OF WIGGINS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 126.    Argued December 9, 1915.—Decided June 12, 1916.

Material representations in an application for life insurance which are incorrect, if known to be untrue by the assured when made, and nothing else appearing, invalidate the policy issued by the insurer relying on such representations, without further proof of actual conscious design to defraud.

The general rule, which imputes an agent's knowledge to the principal, does not apply when the third party knows there is no foundation for the ordinary presumption, and he is acquainted with circumstances plainly indicating that the agent will not advise the principal.

The rule imputing agents' knowledge to the principal is intended to protect those exercising good faith and not as a shield for unfair dealing.

While § 2765, Florida Statutes, undertakes to designate as agents of
    insurance companies certain persons, in fact, acting for such com-
    panies in some particulars, it does not fix the scope of their authority
    as between the company and third persons, and does not raise special
    agents with limited authority into general ones with unlimited power,
One consciously permitting an application containing material mis-
    representations to be presented by subordinate agents to officers of a
    life insurance company, under circumstances which he knows
    negatives any probability of the actual facts being revealed, and later
    accepting policies which he knew were issued in reliance upon state-
    ments both false and material, can claim nothing under such policies.
An applicant for insurance should exercise toward the company the
    ame good faith which he may rightfully demand from it; the rela-
    tionship demands fair dealing by both parties.
211 Fed. Rep. 31, reversed.

THE facts, which involve the construction and effect
of an application for life insurance policy containing false
statements, and the liability of the company issuing poli-
cies in reliance thereon, are stated in the opinion.

*Mr. Frederick L. Allen*, with whom *Mr. Emmett Wilson*,
*Mr. Philip D. Beall* and *Mr. Murray Downs*, for petitioner.

*Mr. W. A. Blount*, with whom *Mr. A. C. Blount* and
*Mr. B. F. Carter* were on the brief, for respondents.

MR. JUSTICE McREYNOLDS delivered the opinion of the
court.

Respondents sued to recover upon four policies, not
different except as to numbers, for $7,662.00 each and
dated December 16, 1908, on the life of their testator
Wiggins, who died March 26, 1910. By various pleas
the insurance company set up that the application upon
which policies were based contained material representa-
tions both false and fraudulent. In reply the executors
denied truth of each plea and also alleged that if the appli-

cation contained any misrepresentations the actual circumstances were known to company when policies issued.

Two separate application blanks, each plainly printed upon a large single sheet, were filled out and presented. They are substantially identical except medical examiner's report upon one, dated December 15, 1908, is signed by Geo. C. Kilpatrick, M. D., in two places, while the other, dated December 16, 1908, is twice signed by J. S. Turberville, M. D. (Under the company's rules where insurance applied for amounted to $30,000 two medical examinations were required.)

At the top of each sheet the following appears: "THIS APPLICATION made to the Mutual Life Insurance Company of New York is the basis and a part of a proposed contract of insurance, subject to the charter of the company and the laws of the State of New York. I hereby agree that all the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are by me warranted to be true, and are offered to the company as a consideration of the contract, which I hereby agree to accept, and which shall not take effect unless and until the first premium shall have been paid, during my continuance in good health, and unless also the policy shall have been signed by the president and secretary and countersigned by the registrar of the company and issued during my continuance in good health; unless a binding receipt has been issued as hereinafter provided."

Immediately thereafter are statements concerning assured's address, occupation, birth, character of policy desired, etc., and finally this, alleged and shown to be untrue: "22. I have never made an application for life insurance to any company or association upon which a policy has not been issued on the plan and premium rate originally applied for, except as to the following companies or associations: None, and no such application

is now pending or awaiting decision." And this part of the paper concludes:

"Dated at Pine Barren, Fla. Dec. 15, 1908.

Signature of person whose ⎫
life is proposed for in- ⎬ CILBEY L. WIGGINS
surance, ⎭

I have known the above named applicant for six years and saw him sign this application. I have issued binding receipt No.—.

J. D. TORREY     Soliciting Agent,
[by rubber stamp]
J. D. TORREY, MANAGER,
    MOBILE, ALA."

On lower portion of the same page, under caption "Medical Examiner's Report," are sundry statements, ostensibly by applicant, concerning his health, history, etc.— among them the following, alleged and shown to be untrue:

"3. (a) What illnesses, diseases, or accidents have you had since childhood? Pneumonia. Number of attacks: One. Date of each: 1899. Duration: 30 days. Severity: Not severe. Results: Complete recovery."

"4. State every physician whom you have consulted in the past five years. None."

"8. Have you undergone any surgical operation? No."

"13. (a) Have you ever been under treatment at any asylum, cure, hospital or sanitarium. No."

"16. Have you ever been examined for a policy in any company or association which was not issued as applied for? No."

This division ends thus:

"Dated at Pine Barren, I certify that my answers to State of Florida the 15 day the foregoing questions are of December 1908          correctly recorded by the Witness:          Medical Examiner.
GEO. C. KILPATRICK, M. D.   CILBEY L. WIGGINS
                    Signature of person examined."

At the top of reverse page, under "Medical Examiner's Report (Continued)", there are many answers purporting to be replies to inquiries propounded by medical examiner concerning applicant's figure, apparent age, measurements, pulse, results of physical examination and personal investigations, etc. And then the following:

"I certify that I have made this examination at Pine Barren, Fla., on this 15 day of December, 1908, and that the foregoing questions have been put, and the answers of the applicant recorded as stated.          GEO. C. KILPATRICK, M. D.
                  Medical Examiner."

The four policies, after being signed in New York by the president, secretary, and registrar of the company, were delivered to assured in Florida. Among others, they contain these clauses:

"This policy and the application herefor, copy of which is indorsed hereon or attached hereto, constitutes the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the insured shall avoid or be used in defense to a claim under this policy unless contained in the written application herefor, a copy of which is indorsed hereon or attached hereto." "Agents are not authorized to modify this policy or to extend the time for paying a premium."

During summer of 1907 assured suffered serious pains in his head and, after consulting more than one physician, went to a sanitarium at Montgomery, Alabama, and was there operated on for a cystic enlargement of the lower jaw caused by an impacted wisdom tooth. He was confined to the sanitarium for ten days and remained under

immediate care of a physician from July 16th to August 13th, 1907.

Early in November, 1908, he applied to Prudential Insurance Company of America through J. C. Hogue, a special agent operating under J. R. Tapia, its manager at Mobile, Alabama, for insurance amounting to $40,000. The application was accompanied, according to its requirements, by two medical reports dated November 3d and 4th, signed respectively by Dr. J. C. McLeod and Dr. Geo. C. Kilpatrick. Several weeks later the company indicated unwillingness to accept risk because of location but the application although marked "withdrawn" was retained. At this time Wiggins had $30,000 insurance with the Prudential, $20,000 with the Equitable, and $5,000 with fraternal insurance companies.

The application of petitioner now under consideration resulted from earnest and persistent solicitation by the same J. C. Hogue. The circumstances under which papers were prepared and signed are not entirely clear; but it appears without contradiction that they were not signed by assured in Torrey's presence—there was no personal acquaintance between the two men. Also that neither medical report was signed by assured in presence of Dr. Geo. C. Kilpatrick or Dr. J. S. Turberville; and that neither physician made the personal examination certified by him. The physicians filled the blanks and signed their names at Hogue's request and because of his representations. Through Torrey, petitioner's district manager at Mobile, the application was forwarded to New York, and, relying upon its statements, officers there issued policies and sent them to assured with copies of application papers which by reference were incorporated therein. So far as appears, assured accepted them without objection and paid the premiums.

An effort was made to show that facts concerning Wiggins' medical history, former unsuccessful application to

Prudential and circumstances surrounding transactions now in question were known by Hogue, the medical examiners, or Torrey, each of whom it is claimed was petitioner's agent.

Assured was sixty-one years of age, president of a lumber company, apparently a man of considerable wealth, and experienced in insurance matters.

At conclusion of evidence counsel for insurance company asked a directed verdict. This was refused; and the court in effect instructed the jury: That in order for company successfully to defend upon ground of false statements these must have been material and made by Wiggins with knowledge of their falsity and with a fraudulent purpose—that is, with intent to deceive. That if they believed it knew of their falsity when application was accepted, no defense could be based upon them. That it knew the actual facts if the jury "should find that an agent whose knowledge would be the knowledge of the defendant did so know." But if the jury found that falsity of statements was within knowledge of Hogue and Torrey and medical examiners and further found an understanding, tacit or express, between Wiggins and said agents to procure the policies by collusive coöperation to conceal the truth, there could be no recovery. Excerpts which follow fairly indicate general import of charge:

"The contract of insurance in this case as expressed by the policies, embraces the statements and representations of Wiggins, the deceased, made to the agent, Hogue, or to Kilpatrick, or Turberville, the medical examiners. Such statements were required to be truthfully made, and was a condition for the issuance of the contract, and this contract provides that all statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties. Whether the representations made by Wiggins in his application for insurance had been rejected; or whether he had been treated in a cure, san-

itarium or hospital; or whether he had undergone a sur-
gical operation; or whether he had had any illness or
disease; or whether he had consulted a physician for his
health, to serve as a defense by the company to this action,
depends on whether such statements were knowingly
false and fraudulently made.

"If Wiggins knew they were false, and that he made
them with the fraudulent purpose of obtaining the policy
of insurance, then such statements would avoid the policy
and would serve as a good defense by the company; pro-
vided, that the company at the time it accepted the
application of the deceased as an insurance risk, had no
knowledge of the falsity of the statements and representa-
tions made by Wiggins in his application for insurance.

"The knowledge of the agent of the insurance company
would be the knowledge of the company, and if the agent
representing the company in taking the application, or the
statements of the medical examiners had knowledge of the
falsity of the statements, then the insurance company
would be estopped from setting up such false statements
or misrepresentations of which they had knowledge before
the issuance of the policy as a defense to this action.

. . .

"If you find from the evidence that the statements of
Wiggins in the several matters inquired about his health
and operation and treatment in a sanitarium were false,
and further find that the agents Hogue, and Torrey and
Turberville knew they were false, and you further find
from the evidence that there was an understanding, tacit
or expressed, between Wiggins and the said agents to
procure the policies by collusive co-operation to conceal
the truth from the company as to the several matters in-
quired about, then such conduct upon the part of Wiggins
would avoid the policies, and the plaintiffs could not re-
cover in this action."

Petitioner made timely objections and presented special

requests, setting forth its theory, which were denied. The Circuit Court of Appeals affirmed a judgment upon verdict for respondents. Among other things it said (211 Fed. Rep. 31, 34–35):

"That, under the language of the policies involved in this suit, the defendant, to avoid the policies for false representations, must establish their falsity, materiality, and the knowledge of the insured, actual or imputed, of their falsity.

. . .

"This leaves for consideration the representation of the insured that he had been examined by Dr. Turberville, defendant's medical examiner, and that the answers recorded by the medical examiner in his report were correct. In truth, there was no such examination had, and the insured must have known that there was none, and the representation that there had been one was a material one. So with regard to the representation of the insured that there had been no previous application for insurance made by him and rejected or not passed upon favorably by the insurance company. This was untrue, must have been known to have been untrue by the insured when he made it, and it was material. Either of these two last representations would be sufficient to avoid the policies, unless the defendant is estopped to rely upon them, by reason of its knowledge of their falsity. It had such knowledge, if at all, because of the knowledge of its agents and examiners, who handled the matter for it."

And further (p. 37): "The sta ute [§ 2765, General Statutes of Florida—copied in marg.n] [1] prescribes that every

_____

[1] "2765. *Agents.*—Any person or firm in this State, who receives or receipts for any money on account of or for any contract of insurance made by him or them, or for such insurance company, association, firm or individual, aforesaid, or who receives or receipts for money from other persons to be transmitted to any such company, association, firm or individual, aforesaid, for a policy of insurance, or any renewal

person who receives money for an insurance company in payment of a contract of insurance, or who directly or indirectly causes to be made any contract of insurance, shall be deemed to all intents and purposes an agent or representative of such company. Under this description, we think Torrey, the defendant's Mobile manager, Hogue, the soliciting agent, and the two medical examiners were agents of the defendant to all intents and purposes, and so, for the purpose of charging it with notice of what they knew, when the policies were written."

All parties treat the policies as Florida contracts. The medical examiners' reports are plainly integral parts of application and by apt words the latter became an essential constituent of the policies.

Considered in most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud. *Moulor* v. *Am. Life Ins. Co.*, 111 U. S. 335, 345; *Phœnix Life Ins. Co.* v. *Raddin*, 120 U. S. 183, 189; *Aetna Life Ins. Co.* v. *Moore*, 231 U. S. 543, 556–557; May on Insurance, 4th ed., § 181.

The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows

---

thereof, although such policy of insurance is not signed by him or them, as agent or representative of such company, association, firm or individual, or who in any wise, directly or indirectly makes or causes to be made, any contract of insurance for or on account of such insurance company, association, firm or individual, shall be deemed to all intents and purposes an agent or representative of such company, association, firm or individual."

there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith and not as a shield for unfair dealing. *The Distilled Spirits*, 11 Wall. 356, 367; *American Surety Co.* v. *Pauly*, 170 U. S. 133, 156; *American Natl. Bank* v. *Miller*, 229 U. S. 517, 521, 522; Mechem on Agency, 2d ed., § 1815.

Section 2765 of the Florida statutes, *ante*, undertakes to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons and certainly does not raise special agents with limited authority into general ones possessing unlimited power. We assume Hogue, Torrey and the medical examiners were in fact designated agents of the company with power to bind it within their apparent authority; and in such circumstances the statute does not affect their true relationship to the parties. See *Continental Ins. Co.* v. *Chamberlain*, 132 U. S. 304, 310; *New York Life Ins. Co.* v. *Russell*, 77 Fed. Rep. 94, 103; *Wood* v. *Firemen's Insurance Co.*, 126 Massachusetts, 316, 319; *John R. Davis Lumber Co.* v. *Hartford Fire Ins. Co.*, 95 Wisconsin, 226, 234–235.

The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the

representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, 529, 533, 534; *Assurance Co.* v. *Building Association*, 183 U. S. 308, 361; *U. S. Life Ins. Co.* v. *Smith*, 92 Fed. Rep. 503.

Considered with proper understanding of the law; there is no evidence to support a verdict against petitioner and the trial court should have directed one in its favor.

Judgment of the Circuit Court of Appeals is reversed and the cause remanded to the United States District Court, Northern District of Florida, for further proceedings in accordance with this opinion.

*Reversed.*

MR. JUSTICE PITNEY dissents.