## STIPCICH v. METROPOLITAN LIFE INS. CO.

(District Court, D. Oregon. October 26, 1925.)

No. 9570.

**1. Insurance ☞127—Material change in health of applicant between date of application and issuance of policy voids policy unless known to insurer.**

Where insurer incurs no liability until application is approved, and policy issued, statements as to health of applicant contained in application are in effect until policy is issued and form part thereof, and material change in health of applicant between date of application and issuance of policy will avoid policy unless known to insurer.

**2. Insurance ☞646(1½)—Representations of assured in application presumed true when made, and to continue so till issuance of policy.**

Assured's representations and answers to questions in application are presumed true at time made, and to continue so until issuance of policy.

**3. Insurance ☞646(3)—Insurer has burden of proving material change in applicant's health between date of application and issuance of policy.**

Insurer has burden of proving alleged material change in applicant's health between date of application and issuance of policy.

**4. Insurance ☞127, 646(3)—Applicant has burden of showing notice to insurer of material change in health between making and acceptance of application; insured has burden of showing notice of change of condition of health.**

Applicant for insurance has duty to notify insurer of any material change in health, between making and acceptance of application, and, on showing that such change occurred, has burden of showing that insurer had notice thereof.

**5. Principal and agent ☞178(1)—Imputation to principal of knowledge of agent limited by agent's authority.**

Knowledge of agent is imputed to principal only in matters which are within scope of agent's authority.

**6. Insurance ☞378(3)—Knowledge on part of soliciting agent before acceptance of application not imputed to insurer.**

Knowledge on part of agent, having authority only to solicit insurance, and not to accept risk or issue policies, of material change in applicant's health between making and acceptance of application, held not imputed to insurer, notwithstanding Or. L. § 6435, declaring one who solicits and procures applications for life insurance shall be regarded as agent of company.

**7. Insurance ☞78—Limitations on soliciting agent's power held valid and binding on insured and his beneficiaries.**

Restrictions and limitations on power and authority of soliciting agents held such as insurer had right to make, and binding on insured having knowledge thereof, and his beneficiaries.

At Law. Action by Josephine Stipcich against the Metropolitan Life Insurance Company. On motion for new trial, after directed verdict for defendant. Motion denied.

G. C. & A. C. Fulton, of Astoria, for plaintiff.

Richard W. Montague and Erskine Wood, both of Portland, Or., for defendant.

BEAN, District Judge. This is an action on a policy of insurance on the life of Antone Stipcich, loss, if any, payable to his wife. The policy was issued March 26, 1924. The application therefor was made on the 17th of February of the same year. In it the applicant stated that he had been operated on for "perforating ulcer, duodenum," in January, 1922, but had recovered. To all other questions as to whether he had had certain diseases his answer was "No."

Between the date of his application and the issuance of the policy, there was either a return of his old trouble or a manifestation of a new ulcer. On the day he applied for insurance, but before making the application, he consulted a physician (Dr. Forrstron, who previously had operated on him) for some trouble of the stomach, and was given a prescription, although this was not disclosed in the application. A few days later, and after the application, he again called upon the same physician in regard to the matter, who suggested that an X-ray be taken. On the 7th or 8th of March, he consulted Dr. Sommers of Portland, and was sent to the hospital for observation, where he remained five or six days, and during that time Dr. Sommers made a careful examination and diagnosis of his condition, and told him that in his opinion he had a duodenal ulcer, and advised surgical interference. About the 20th of the month he consulted and was examined by Dr. Stater, with the same result and advice. Soon after the delivery of the policy he went to the hospital, was operated on, and died the 8th of April.

On the trial, the plaintiff offered to testify that after her husband had been examined by Dr. Sommers and before the issuance of the policy she talked with Mr. Julian Coblentz, the agent of the defendant, who took the application, about the matter

and told him that Dr. Sommers had recommended an operation, possibly for an ulcer, and that Coblentz suggested that her husband be examined by another physician.

Objection was sustained to the offer of proof, and verdict directed in favor of the defendant.

The motion for a new trial raises substantially two questions: First, whether it was incumbent on the defendant company to show affirmatively that, at the time it issued and delivered the policy, it did not know of the change in the condition of the health of the applicant, or was the burden on the plaintiff to show that it had such knowledge; and, second, did the court err in ruling that the proposed testimony of the plaintiff as to her conversation with Coblentz was inadmissible?

[1, 2] The application for insurance provides that the company shall incur no liability until the application has been received, approved, and the policy issued and delivered. The representations and statements made by the applicant in his application as to the condition of his health, therefore, continued up to and were in effect at the time the policy was issued and delivered, and formed a part of the contract. The contract of insurance becomes effective from that time, and not before. Any material change in the health of the applicant between the date of the application and the issuance of the policy would void the policy unless known to the company. That there was such a change requires no argument. It is scarcely conceivable that a responsible insurance company would knowingly insure the life of one who was at the time suffering from acute intestinal trouble diagnosed by two competent physicians as a duodenal ulcer, and who had advised surgical interference. In any event, fair dealing would suggest that it be informed of such facts and thus be given an opportunity to determine whether it would nevertheless issue the policy. There is a presumption that the assured's representations and answers to the questions in his application were true at the time they were made and would so continue down to the issuance of the policy. 14 Ruling Case Law, p. 1343; 33 Cor. Jur. 104. But there is no presumption that he advised the company of the falsity of such statements or of the change in his health after the application, or that the continuing representations were not true. Indeed, if there is any presumption at all, it would seem to be to the contrary, for, as a reasonable man, the applicant must have known that it

was at least very doubtful whether the policy would issue if the company knew the actual condition of his health.

[3, 4] The burden of proof was on the company to show that there was a material change in the health of the applicant between the date of the application and the issuance of the policy, and this burden it assumed. It was, however, the duty of the applicant to disclose to the company any such change, and in my judgment it was incumbent upon the plaintiff, after the showing made by the defendant, to prove that such duty had been performed before it is to be held that the company consented to insure the life of the applicant in the condition of his health at the time the policy was issued. May on Insurance, § 190; 25 Cyc. 797; Sun Mutual Ins. Co. v. Ocean Ins. Co., 107 U. S. 485, 1 S. Ct. 582, 27 L. Ed. 337; Equitable Life Ins. Soc. v. McElroy, 83 F. 631, 28 C. C. A. 365; Cable v. U. S. Life Ins. Co., 111 F. 19, 49 C. C. A. 216; Security Life Ins. Co. v. Booms, 31 Cal. App. 119, 159 P. 1000. To adopt the language of Judge Sanborn in Equitable Life v. McElroy, supra:

"The nature of this contract, the insurance of a man's life, the perfect familiarity of the man himself with the condition of its subject-matter, his own life, the ignorance of the insurance company concerning it, and its necessary reliance in making the contract upon his good faith, honesty, and truthfulness, impose upon him the duty of disclosing to the company every fact material to the risk which comes to his knowledge at any time before the contract is finally closed. An intentional omission to discharge that duty perpetrates a plain fraud upon the company, which necessarily avoids the contract."

If the company had been advised of the change in the applicant's health and thereafter issued the policy, it could not be heard to say that the policy was void on that account, but it was entitled to be fully informed on that subject, so that it might determine whether it would complete the contract. It had a right to rely on the truth of the statements made in the application, in the absence of other information, and act accordingly, and, if it had been advised of the change in applicant's health, it seems to me that it was incumbent upon the plaintiff to show that fact, and not on defendant to prove a negative.

[5, 6] It is claimed by the plaintiff that notice to Coblentz of a change in the applicant's health, after the application had been

signed and forwarded to the company, is to be imputed to the company. This would not follow unless Coblentz had either actual or ostensible authority to act for the company in the matter. Unless he had, mere knowledge on his part, uncommunicated to his principal, would not be binding upon it. Knowledge to an agent is only knowledge to his principal in matters which are within the scope of his authority. Section 6435, Oregon Laws, which provides that one who solicits and procures an application for life insurance shall be regarded as an agent of the company, does not fix the scope of such agent's authority, and does not raise a special agent with limited authority to a general agent. Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202. Coblentz was a soliciting agent, with power to solicit insurance, take applications, and collect premiums when due, but without authority to accept risks or issue policies, make contracts of insurance, or modify or waive any of the conditions of the contract. It so appears from the application and policy. It is declared in the application that the statements and answers in the application, together with the report of the medical examiner, shall form the basis of the contract of insurance if one be issued, and that no agent or any other person except the officers of the company have power, on behalf of the company, to make, modify, or discharge any contract of insurance, or bind the company by making any promises respecting any benefits under any policy, and that any knowledge on the part of any agent as to any facts pertaining to the applicant shall not be considered as having been made or brought to the knowledge of the company unless stated in the application.

[7] The policy as delivered and accepted contains the provision that no agent is authorized to waive forfeiture or make, modify, or discharge the contract. These restrictions and limitations on the power and authority of the agent are such as the company had a right to make, and of which the assured had knowledge, and by which he and his beneficiaries are bound. Iverson v. Metropolitan Life, 151 Cal. 746, 91 P. 609, 13 L. R. A. (N. S.) 866; Nor. Assurance v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Madsen v. Maryland Casualty Co., 168 Cal. 204, 142 P. 51.

It follows, therefore, that the motion for a new trial should be overruled, and it is so ordered.