ÆTNA LIFE INS. CO. v. KIMBLE et al.

(Circuit Court of Appeals, Third Circuit. December 7, 1926.)

No. 3475.

1. Insurance ⟨⟩665(3)—Evidence of insured's misrepresentations as to previous health and treatment by physician held to preclude recovery.

Evidence relative to insured's misrepresentations, in application, as to his previous health and treatment by physician, held to preclude recovery.

2. Insurance ⟨⟩253—Applicant should exercise same good faith toward company which may be demanded of it.

Applicant for insurance should exercise toward company same good faith which may rightly be demanded of it; relationship demanding fair dealing by both parties.

In Error to the Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by Stanley C. Kimble and others, administrators of Bernard A. Ahlberg, deceased, against the Ætna Life Insurance Company. Judgment for plaintiffs, and defendant brings error. Reversed.

Paul Reilly, of Philadelphia, Pa., and Bleakly, Stockwell & Burling, of Camden, N. J., for plaintiff in error.

Thomas E. French, Samuel H. Richards, and Floyd H. Bradley, all of Camden, N. J., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, the administrators of Bernard A. Ahlberg, all citizens of New Jersey, brought suit and recovered a verdict against the Ætna Life Insurance Company, a citizen of Connecticut. On entry of judgment, the latter sued out this writ of error, and the underlying question involved is whether, under the proofs, the insurance company was entitled to binding instructions in its favor. After full consideration, we are of opinion it was, and our reasons for so holding we now state. [1] The testimony of Dr. G. Harlan Wells of Philadelphia was that the insured had consulted him between May 11, 1920, and November 10, 1924, some twenty-five or thirty times. Asked what his diagnosis was when he came, Dr. Wells testified: "Chronic interstitial nephritis, which means a chronic inflammation of the kidney or chronic Bright's disease, with a degeneration of the heart muscle, or what we know technically as a chronic myocarditis. Q. Did you make known that diagnosis to the patient? A. I did."

Describing his services during the whole period Dr. Wells said: "Mr. Ahlberg came to see me on the 11th of May, 1920. At that time he complained of being short of breath, somewhat dizzy, and his feet were swollen above his ankles. I examined him at that time. I found that he had albumen in his urine, that he had casts in his urine, and that there was a weakness of a muscle of his heart. I advised him to take a rest from his work, and prescribed a diet and certain medicines. He improved very decidedly, and I got him entirely rid of this dropsical condition in his feet, and his breathing and his heart condition improved also. He came to see me about, roughly I should judge, 25 or 30 times." Asked, "When he reported to you from time to time, what did he come to you for?" the witness testified, "Well, he came chiefly for recurrence of symptoms related to these conditions, chiefly shortness of breath that he would get on exertion, sometimes headache, sometimes dizziness, and in November, 1924, he consulted me chiefly because he had a pain in his left kidney, and he passed several clots of dark blood and had discomfort on passing the urine." Referring to this same occurrence, the doctor, in answer to the question, "How much had he improved?" said, "Well, he had improved a great deal, except that just the last time he consulted me on the 3d of November he had had this hemorrhage from his bladder, or at least in the urine, and he was rather frightened about that, and he had a good deal of pain, but when he left me on the 10th that blood had disappeared and he was relieved of that."

Following this, to wit, on March 2, 1925, the deceased made application for life insurance for $25,000 to the defendant, in which when asked: "(9) Have you consulted a physician or practitioner for or suffered from an ailment or disease of * * * (b) heart, * * * (c) * * * kidneys or bladder?" to both of which he stated, "No." The

general question was then asked him: "(10) Have you consulted, or been examined or treated by any physician or practitioner not named above within the last five years?" and, to the requirement "Yes or No," he stated, "Yes." To the requirement, "Name or address of all," he stated, "Lettie A. Ward, Camden," and the reason for consultation, "Colds." Following these statements, the deceased certified "that no material circumstance or information has been withheld or omitted concerning my past and present state of health." Based on this application, the company issued the policy in suit, on which the deceased paid a quarterly premium of $606.50. On May 24, 1925, the insured died from injuries resulting from an accident.

The company had no knowledge of the falsity of the statements until after the death of the decedent whereupon it tendered back to his representatives on October 27, 1925, the quarterly premium paid by decedent, and on the same day filed a bill in equity in the court below to cancel the policy. On the same day the representatives of the deceased brought suit on the policy in a state court, which suit was subsequently removed to the court below, and is the case now before us. The bill to cancel has not been disposed of by the court below.

[2] An examination of the application, the proofs concerning the making thereof, and the capacity of the deceased to understand its terms, shows no uncertainty in its terms or question as to its evidencing exactly what it states, namely, that the deceased concealed from the company what it was entitled to know, namely, his treatment by Dr. Wells for a long time and for serious ailments. The deceased was president of a manufacturing company, a bank, and a building and loan director, a member of the Camden Club, interested in civic affairs, and of excellent repute in the community. Due to these facts, the statements he made correspondingly carried weight and tended to preclude inquiry. Standing as the application does on its statements, and in view of the uncontradicted proof of Dr. Wells, which we have quoted, the statements made by the deceased were simply not true, and the policy was issued on this untruthful statement. To such a situation this court has simply to apply to this case the law and conclusions reached by the Supreme Court in Mutual Co. v. Hilton, 241 U. S. 613, 624, 36 S. Ct. 676, 680 (60 L. Ed. 1202), namely:

"Beyond doubt, an applicant for insurance should exercise toward the company the same good faith which may be rightly de-

manded of it. The relationship demands fair dealing by both parties. * * * Considered with proper understanding of the law, there is no evidence to support a verdict against petitioner [defendant] and the trial court should have directed one in its favor."

So holding, the judgment below is reversed.