## DE ROY v. NEW YORK LIFE INS. CO.
### No. 6223.

District Court, W. D. Pennsylvania.
June 12, 1931.

A. M. Neeper and J. F. Callahan, both of Pittsburgh, Pa., for plaintiff.

William H. Eckert and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

Abe I. De Roy, June 18, 1929, made application for two life insurance policies from defendant, in the sum of $10,000 each. Policies were delivered to him in pursuance of his applications. He paid the premium thereon and died September 23, 1929. Due proofs of death were made by the plaintiff, the beneficiary named in each of the policies, who was his wife. Defendant refused payment; hence this action was brought. The defense is that the policies were procured by certain false and fraudulent representations and that the policies did not go into effect by reason of a violation of a condition precedent. At the trial the court instructed the jury to find for plaintiff for the amount of the premiums paid, with interest. Plaintiff filed a motion for a new trial and in support thereof averred two reasons.

The first is that the court erred in receiving evidence of the false representations averred in the affidavit of defense consisting of answers to questions asked by one of the defendant's medical examiners, which were made a part of each application (a copy of which was attached to each policy), on the ground that defendant caused the insured to be examined by two medical examiners and attached only the answers propounded by one of the medical examiners. Plaintiff contends that under these facts the answers attached could not be received in evidence, nor could they be considered parts of the policies.

It appeared from the evidence that the

insured, at the time of the applications, had $50,000 life insurance with defendant. That under a rule of the defendant under such circumstances, an examination and report from two medical examiners are required. That defendant had the insured examined by two of its examiners. That each of said examiners received answers from the insured to the medical questions propounded, and that a copy of the questions and answers propounded by one medical examiner only, together with the answers thereto, was attached to each policy. The Pennsylvania Act of May 17, 1921, P. L. 682, which is a substantial reenactment of the Act of May 11, 1881, P. L. 20, provides: "All insurance policies, issued by stock or mutual insurance companies or associations doing business in this State, in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between such parties." Section 318 (40 PS § 441).

In Lenox v. Greenwich Insurance Co., 165 Pa. 575, 30 A. 940, 941, the Supreme Court of Pennsylvania said: "It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, printed usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and, if it contained errors, have them rectified before it became too late."

The penalty for a failure to attach a correct copy of the application when it forms part of the policy is that no such application "shall be received in evidence" or be "considered a part of the policy."

There are many cases, such as Custer v. Fidelity Mutual Aid Association, 211 Pa. 257, 60 A. 776; Fidelity Title & Trust Co. v. Illinois Life Insurance Co., 213 Pa. 415, 63 A. 51; Paulhamus v. Security Life & Annuity Co., 163 F. 554 (C. C. M. D. Pa.); and Muhlenberg v. Mutual Fire Insurance Co., 211 Pa. 432, 60 A. 995, which hold that where the application is not attached to the policy it cannot be offered in evidence and cannot be considered as a part of the contract. In Morris v. State Mutual Life Assurance Co., 183 Pa. 563, 39 A. 52, the questions propounded by the medical examiner, together with the answers thereto, were not attached to the application. It was held under such circumstances that the application could not be offered in evidence.

It is admitted that the copies of the applications attached to the policies in this case contain correct copies of the answers made to one of the medical examiners. It is not contended that the answers made to the other medical examiner were different. It is contended that the answers made to both medical examiners were, or should have been, a part of the applications; therefore, that the policies do not contain a correct copy of the applications and that the applications cannot properly be offered in evidence or considered part of the policies.

If this case had arisen prior to the Pennsylvania acts aforesaid, the policies would be considered the contracts in this case. Where there is doubt as to the terms of a contract or the meaning thereof, the settled construction thereof by the acts of the parties is of great weight. Both parties by their acts construed the policies delivered by the defendant, accepted by the insured, and retained by him until his death, as containing the entire contract.

In Stipcich v. Metropolitan Life Insurance Co., 277 U. S. 311, 316–318, 48 S. Ct. 512, 513, 72 L. Ed. 895, the Supreme Court, speaking by Mr. Justice Stone, said:

"Insurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. * * *

"Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. * * *

"But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the applica-

tion and before delivery of the policy. For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy.
* * *

"The defendant in insisting that Stipcich was under an obligation to disclose his discovery to it is not attempting to add another term to the contract. The obligation was not one stipulated for by the parties, but it is one imposed by law as a result of the relationship assumed by them and because of the peculiar character of the insurance contract. The necessity for complying with it is not dispensed with by the failure of the insurer to stipulate in the policy for such disclosure."

If insured, after receiving the policies, was of the opinion that a copy of the answers to the questions propounded by the second medical examiner should be attached to the applications, good faith required of him to object to the policies delivered on this ground; that is, that the policies did not contain the entire contract.

The retention of the policies was an approval of the applications as attached to the policies. In New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 844, 29 L. Ed. 934, it is stated: "The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot, after his death, be avoided."

In Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 623, 624, 36 S. Ct. 676, 680, 60 L. Ed. 1202, it is stated: "Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based."

The copies of the applications attached fulfilled the general intent of the Pennsylvania act as stated in Lenox v. Insurance Co., 165 Pa. 575, 30 A. 940, 941, in these words: "The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and, if it con-

tained errors, have them rectified before it became too late."

There is no evidence in this case that the answers to the questions propounded by both medical examiners were agreed to or intended by the parties to be a part of the applications. The evidence conclusively shows the contrary. The policies expressly state, "This contract is made in consideration of the application therefor and of the payment in advance of the sum of $702.20," etc.; also, "The policy and the application therefor, copy of which is attached hereto, constitute the entire contract." There was no objection or protest by the insured at any time prior to his death that the policies delivered, accepted and retained did not contain correct copies of his applications. The plaintiff's claim as averred in her statement of claim, is evidently based on the theory that the contracts consist of the policies with the copies of the applications attached thereto. Plaintiff averred in paragraphs 6 and 7 of the Statement, that her husband made two applications June 18, 1929; that defendant "caused my said husband to be examined by its medical examiners" and that in pursuance to said applications the policies in suit were issued and delivered. The evidence objected to was properly received.

The second reason assigned in support of the motion for a new trial is that the court erred in determining as a matter of law that the policies were avoided by fraud, but should have submitted this question to the jury.

Defendant averred in its affidavit of defense that insured made false answers to certain questions in his applications; that these answers were material, were known by him to be false, and were made for the purpose of deceiving and procuring the policies in suit; and that by reason thereof defendant was deceived and issued said policies.

The questions and answers referred to above are:

"7. B. Have you ever been under observation or treatment in any hospital, asylum or sanitarium? Yes. Noted-double herniotomy 10 years ago. Inguinal. Recurrence in left side. Wears truss on left, holds up in good position.

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of * * *

"B. The Heart, Blood Vessels or Lungs? No."

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? No.

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? None."

There was uncontradicted evidence that Dr. Gardner of Pittsburgh examined the insured November 26, 1928; that he diagnosed his ailment as angina pectoris, a serious heart trouble, and advised the insured that he had heart trouble; that Dr. Criep, insured's family physician, attended the insured daily from November 26, 1928, to January 26, 1929, making one or more calls per day; that he diagnosed the insured's ailment as a fairly serious form of heart trouble and so advised the insured; that Dr. Heard was called into consultation with Dr. Criep shortly after November 26, 1928, and several times thereafter; that he advised the insured that he had heart trouble. Insured went to Atlantic City for rest and recuperation on or about January 26, 1929; he returned to Pittsburgh on or about March 10, 1929. From January 29, 1929, until March 9, 1929, while insured was in Atlantic City, he was under the care of Dr. Weinberg, who made as many as five and six calls a day the first week of his treatment. When Dr. Weinberg was called insured told him he was having one of his usual heart attacks. Dr. Weinberg diagnosed the insured's trouble as being in the gall bladder and treated him accordingly. After insured returned to Pittsburgh in March, 1929, and prior to the applications for insurance June 18, 1929, he consulted Dr. Criep, his family physician, thirteen times.

Insured went to the Passavant Hospital in Pittsburgh in January, March, and May, 1929, to have electro-cardiograms made of his heart. He died September 23, 1929, of angina pectoris, according to the testimony of Drs. Criep and Heard, which was confirmed by the autopsy made by Dr. Helmbold. Plaintiff testified that insured was sick in Pittsburgh and that Drs. Criep and Heard had examined him. She also testified to the illness in Atlantic City and of the services rendered by Dr. Weinberg.

There was uncontradicted testimony also that defendant relied on these representations and that it would not have issued the policies if truthful answers had been made thereto.

In Barrett v. Virginian Railway Co., 250 U. S. 473, 476, 39 S. Ct. 540, 541, 63 L. Ed. 1092, the Supreme Court said: "Whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court." See also Tutewiler v. Guardian Life Insurance Co., 42 F.(2d) 208, 209 (C. C. A. 5).

In Mutual Life Insurance Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202, insured made false representations as to other insurance, illness, and consultation of physicians. The Supreme Court, in an opinion by Justice McReynolds, said:

"Considered in most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud. * * *

"The assured at least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates. Moreover, the false representations accompanied and were essential parts of the policies finally accepted. He did not repudiate, and therefore adopted and approved, the representations upon which they were based. Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. * * *

"Considered with proper understanding of the law, there is no evidence to support a verdict against petitioner, and the trial court should have directed one in its favor."

See also New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934, and Zeidel v. Connecticut General Life Insurance Co., 44 F.(2d) 843 (D. C. W. D. Pa.).

In Hews v. Equitable Life Assurance Society (C. C. A.) 143 F. 850, 853 (C. C. A. 3), which was an action at law by the beneficiary upon a policy which had been issued by the defendant upon the life of her husband, the defense was fraudulent representations as to

health and temperance in the answers to questions contained in the application. The court said: "Careful examination of the evidence has entirely satisfied us that the only inference which could reasonably have been deduced from it is that material representations as to his physical condition and as to his use of alcoholic beverages were made by Hews, both in his application and in his answers to the medical examiner, which were absolutely false, and which he knew to be so, and made with intent that the company should believe and act upon them. This being so, there was nothing upon which a finding that the misrepresentations in question had been 'made in good faith' could have been sustained, and therefore the defendant was entitled to the binding instruction which, in effect, was given upon this subject."

In Equitable Life Assurance Society v. Keiper, 165 F. 595 (C. C. A. 3), certiorari denied 215 U. S. 606, 30 S. Ct. 406, 54 L. Ed. 346, the facts were substantially the same as the facts in the case at bar. Judgment for plaintiff was reversed on the ground that a verdict should have been directed for the defendant.

In New York Life Insurance Co. v. McCarthy (C. C. A.) 22 F.(2d) 241, 242 (C. C. A. 5), there was an action at law by beneficiary to recover insurance and a suit by the company in equity to set aside the policy on the ground of fraudulent representations in the answers to the questions propounded. There was a verdict for plaintiff in the action at law upon which judgment was entered. The suit in equity was dismissed. Appeal was taken from the judgment and decree in both cases. The fraud resulted from the answer to the following question, which question and answer was: " 'What physician or physicians, if any, not named above, have you consulted or been examined or treated by within the past five years?' Answer: 'None.' " The court, in an opinion by Walker, Circuit Judge, page 244 of 22 F.(2d), said:

"The above set out question propounded to the insured called for a statement as to a fact within his knowledge. * * *

"The question now under consideration called for a statement as to a fact material to the risk to be incurred by granting the application for insurance, as an affirmative answer would enable the insurer to make an investigation and ascertain the truth regarding the cause for the consultation or consultations, and the state of health revealed. It cannot reasonably be doubted that the negative answer to the question was calculated to deprive the insurer of an opportunity it was entitled to be afforded of making an investigation for itself and acquiring information of facts material to the risk involved in granting the application for insurance. * * *

"The negative answer to the question under consideration is inconsistent with the absence of intention on the part of the insured to deceive the insurer as to the fact of the insured having consulted or been examined or treated by a physician or physicians within the time stated. We are of opinion that the representation under consideration was one as to a material fact, and that, the uncontroverted evidence showing that that representation was false, and was made with actual intent to deceive, the pleas setting up the falsity of that representation were so established as to make erroneous the court's refusal to give the instruction to the effect that, if the jury believed the evidence, they must find for the defendant."

In Tutewiler v. Guardian Life Insurance Co., 42 F.(2d) 208 (C. C. A. 5), supra, a case very much like the present case, we quote the following material portions of the opinion:

"Appellant brought suit on a policy of $10,000 issued by appellee on the life of Paul R. Davis. The policy was dated March 1, 1927, and contained a clause making it incontestable after one year. The insured died October 28, 1927, within the contestable period. Appellee defended on the grounds that the insured had made false answers to material questions amounting to warranties in the application, in which he stated that he had not consulted or been treated by any physician within five years before the application and had not had syphilis, whereas in truth he had consulted a physician and had been treated for syphilis between February 23, 1922, and February 23, 1927, the date of his application. At the close of the evidence a verdict was directed for defendant, appellee. Error is assigned to that action of the court.

"The testimony of Dr. Dean, which is in the record in full, shows that he had treated Davis professionally for syphilis many times during the five years preceding the application for insurance. * * *

"Under all the circumstances it is hardly possible that any jury of reasonable men would have found in favor of the plaintiff on the evidence in the record. Had they done so the judge would have been justified in

setting aside the verdict and granting a new trial. In such crcumstances it is well settled that it is the duty of the court to direct a verdict."

Under the uncontradicted evidence from several witnesses in this case, the representations by insured as to consultation with physicians, and physicians with whom he had consulted or had been examined or treated, were false; also, the evidence was uncontradicted that defendant was deceived thereby and issued the policies in suit. The only inference that can be taken from the evidence is that insured knew such representations were false and made them with the intention of deceiving defendant and procuring the policies.

The same statement applies (probably in a lesser degree) as to the representations relative to consultations with a physician for ailment and disease of the heart.

The state of evidence was such that, if the verdict had been rendered for plaintiff, the defendant would have been entitled to a new trial.

▇ There is another reason why there could not be a recovery on one of the policies in suit. The applications contain the following provision: "That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination."

The applications were made June 18, 1929. One policy was delivered June 28, 1929, and the other July 20, 1929. Insured consulted Dr. Criep, his family physician, July 1, 1929, and July 7, 1929.

The insurance did not take effect as to the policy delivered July 20, 1929. Bostick v. New York Life Ins. Co. (C. C. A.) 284 F. 256; MacKelvie v. Mutual Benefit Life Ins. Co. (C. C. A.) 287 F. 660; New York Life Ins. Co. v. Horton (C. C. A.) 9 F.(2d) 320; Aetna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824; Harrisburg Trust Co. v. Mutual Life Ins. Co., 278 Pa. 255, 122 A. 292; Panopoulos v. Metropolitan Life Ins. Co., 96 Pa. Super. Ct. 325.

As to the obligation arising by law and independent of the policies, see Stipcich v. Metropolitan Life Insurance Co., 277 U. S. 311, 317, 48 S. Ct. 512, 72 L. Ed. 895.

The motion for a new trial is refused.