Indovina *v.* Metropolitan Life Insurance Co., Appellant.

Argued March 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

168

*D. C. Jennings*, for appellant.

*Harry Diamond*, with him *Harry Pollock*, for appellee.

OPINION BY MR. JUSTICE DREW, April 17, 1939:

Plaintiff, Girolama Indovina, brought this action in assumpsit to enforce payment of $5,000 alleged to be due on an insurance policy issued by defendant upon the life of her son, James V. Indovina. Upon due notice and proof of death of the insured, defendant refused to pay and offered to return the premiums paid, claiming that material statements in the application were false and were known to be such by the insured. The case was submitted and the jury returned a verdict for plaintiff. From the judgment entered thereon, following the refusal of the lower court to grant defendant's motion for judgment n. o. v., this appeal was taken.

Defendant bases its claim that there were material misrepresentations in the application upon the following questions and answers therein: "5. Have you ever been an inmate of, or have you ever received treatment at an asylum, hospital, sanatorium or cure? If yes, give date, duration, name of ailment and name of institu-

tion." Answer: "No." "13. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? *If none, so state."* Answer: "None." The insured signed the application on June 6, 1932. He died June 27, 1933. It was admitted by the plaintiff that, contrary to the answers to questions 5 and 13, the insured had been confined in the Mercy Hospital from November 17, 1930, to January 24, 1931, and that during that period he had been treated by Dr. Frost for a severe anemia. Plaintiff sought to avoid the effect of these false statements by showing that the answers were not made by the insured, but were inserted by a Mr. Lemmon, a personal acquaintance of the insured and also the soliciting agent for defendant. Two witnesses who were present at the time the insured signed the application testified that the answers were not filled in by him, and that it was handed to the doctor with these and the other medical questions blank.

These facts standing alone would support the action taken by the court below, since we have repeatedly held that "a mere showing of falsity of answers appearing in the application does not avoid the policy where the answers were not made by the insured at all or with his knowledge but were supplied by someone else after the signing of the application": *Evans v. Penn Mutual Life Ins. Co.,* 322 Pa. 547, 554; *Stein v. N. Y. Life Ins. Co.,* 319 Pa. 225.

In the instant case, however, plaintiff's own evidence clearly shows that the insured authorized Mr. Lemmon as his agent to fill in the blanks. When the doctor told the insured that "the most important thing I want is the history of your health," the insured said: "I am in a hurry, doctor. I have to go out." "Mr. Lemmon, the agent, knows everything about me from being in the hospital and having doctors treat me," and, "You can get all the details from the agent." Although plaintiff's testimony indicates that the insured did not read the ap-

plication, her own evidence shows clearly that he had full opportunity to do so if he had so desired. He was born in this country and could speak and read English fluently. Having been told by the doctor that what he wanted was a medical history, the insured knew the nature of the questions which he authorized Lemmon to answer. By making Mr. Lemmon his agent for the purpose of answering the questions relative to his medical history, he is bound by the answers so made: *Freedman v. The Providence Washington Ins. Co.*, 182 Pa. 64; Restatement of Agency, sec. 162. In the Freedman case we said (p. 67) : ". . . the plaintiff cannot avoid the responsibility of a misrepresentation by her own agent, whether made knowingly or not and at the same time claim a benefit arising from such misrepresentation." The fact that Lemmon was also the writing agent for defendant is not material here, for his knowledge of the falsity of the answers cannot be imputed to defendant: *Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613. In that case it appeared that the application was filled in by a company agent not in the presence of the insured and that the insured had recently been in a sanitarium, although his application did not so state. The court said (p. 622) : "The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith and not as a shield for unfair dealing. . . ."

When the policy was delivered to the insured, with the application attached, he had a full opportunity to examine it, and it was his duty to do so, to see if his agent

had correctly answered the questions which he had told the doctor would be answered by him. While it is true that where the insured has not authorized anyone to fill in the blanks and is totally unaware that any insertions have been made, he is not bound to examine the policy upon its delivery *(Stein v. N. Y. Life Ins. Co.,* supra), nevertheless, where the answers are made on behalf of the insured and at his expressed direction, it is incumbent upon him to examine the application and the policy to see that his agent has acted properly. As we said in *Rinker v. Ætna Life Ins. Co.,* 214 Pa. 608, 613: "If it be assumed that the answers were falsified, as alleged, that fact would at once appear, when the policy was delivered to her, by the copy of the application attached to it. Inspection would have shown that a fraud had been committed, both upon her and the company, and it would have been her plain duty to make the fact known to the company." Being bound to know when he received the policy that these questions had been falsely answered in the negative, he accepted the policy which he must have understood had been issued in reliance upon statements, both false and material. In such circumstances, the plaintiff beneficiary cannot possibly recover on the policy.

It is thus apparent that the instant case is not governed by the rule enunciated in *Stein v. N. Y. Life Ins. Co.,* supra. Here the answers were inserted by one authorized to make them. There the insured had not authorized any one to fill in the blanks and was wholly unaware that such action had been taken. The insured is bound by the representations in the application "where it affirmatively appears . . . that the policy was issued in reliance on false and fraudulent statements, made by or *on behalf of the insured.* . . ." (Italics added): *Evans v. Penn Mutual Life Ins. Co.,* supra, 555.

From the present record there can be no doubt that the false representations were fraudulent. Fraud is established if it appears that the representations were false in

fact and that the insured knew they were false when he made them, or that the circumstances were such that the insured must have been aware of their falsity: *Evans v. Penn Mutual Life Ins. Co.,* supra. Ordinarily the presence of fraud is a question for the jury, but where the insured's knowledge of the falsity of material representations affirmatively appears from competent and uncontradicted documentary evidence, such as hospital records or admissions in the pleadings, the court may enter judgment for the insurer: *Evans v. Penn Mutual Life Ins. Co.,* supra. Here plaintiff admits in the pleadings that the insured had been in a hospital for over two months for treatment of a severe anemia. Under such circumstances it is obvious that the insured being bound by the negative answers to the questions relating to prior medical attention must have known that they were false: *Kanatas v. Home Life Ins. Co.,* 325 Pa. 93. Plaintiff cannot recover for the reason that the policy was made null and void by fraudulent misrepresentations of the insured of facts material to the risk.

Judgment reversed, and here entered for defendant.