**MEADORS v. UNITED STATES.**
**No. 887.**

United States District Court,
E. D. Kentucky.

Feb. 5, 1954.

B. L. Kessinger, Jr., Lexington, Ky., Alton S. Payne, Winchester, Ky., for plaintiff.

Edwin R. Denney, U. S. Atty., Lexington, Ky., Kit C. Elswick, Asst. U. S. Atty., Lexington, Ky., for defendant.

FORD, Chief Judge.

This action having been heard by the Court on July 14, 1953, and the Court having considered the evidence presented by oral testimony, by depositions of witnesses and by stipulation of the parties, and having considered the briefs filed by counsel for the respective parties and being advised, finds the facts specially and states separately conclusions of law thereon as follows:

### Findings of Fact

1. Isaac L. Pearce entered the military service of the United States on March 15, 1944, and served until his discharge on January 2, 1946.

2. While Isaac L. Pearce was in the military service of the United States, he was issued National Service Life Insurance certificate number N–15 844 859 in the amount of Ten Thousand ($10,000) Dollars, effective March 16, 1944, in which the insured's wife, the plaintiff Marilyn H. Meadors, was designated as the principal beneficiary. After death of the insured, her demand for payment of the amount of the policy was refused.

3. The policy above referred to lapsed upon the expiration of the grace period for failure to pay the premium due thereon on February 16, 1946.

4. In March or April 1946, a swelling on the side of the neck of the insured veteran was noticed and on June 19, 1946, he consulted Dr. G. Bedford Brown of Lexington, Ky., for medical attention on account thereof, and Dr. Brown removed his tonsils and referred him to Dr. Lawrence E. Hurt for further examination and treatment. On July 15, 1946,

the insured was treated by Dr. Hurt for enlarged lymph nodes in his neck and one of these nodes was removed by Dr. Hurt and submitted on the same day to Dr. E. S. Maxwell of Lexington, Ky., for microscopic examination and diagnosis. His diagnosis was "possible Hodgkins disease"; but, at that time, due to the fact that, in the opinion of Dr. Maxwell, the development had not progressed sufficiently for him to be able to make a positive diagnosis, the insured returned on September 19th for further treatment and another lump was removed from his neck by Dr. Hurt and submitted to Dr. Maxwell for microscopic study. At that time the disease had progressed to such extent that Dr. Maxwell was able to positively diagnose the nature of it, and he then positively pronounced it "Hodgkins disease", a malignant and incurable malady evidenced by the malignant tumor removed from the veteran's neck. Dr. Hurt then referred the insured to Dr. Jesse Hill Love, a specialist of Louisville, Ky., for treatment by "deep x-ray therapy".

According to the testimony of plaintiff, she accompanied her husband to Louisville and he was there treated by Dr. Love from October 16, 1946, through October 23, 1946. Upon return to Lexington the insured was given further x-ray treatment at the Good Samaritan Hospital at Lexington, Ky., which she says "could have been in January or February". On February 20, 1947, the insured again returned to Lexington from his home at Winchester, Ky., for treatment by Dr. Hurt and Dr. Theodore L. Adams.

It seems fair to say that in these days of such wide publicity upon the subject of cancer and its usual treatment, it is hardly believable that one subjected to two operations removing lumps of his body tissue for microscopic examination and diagnosis by a specialist, followed by such extensive "deep x-ray therapy", as that prescribed for Mr. Pearce, could be oblivious to the seriousness of his disease or wholly unaware of its nature.

5. The insured continued for some time in his usual employment. In May he began to show evidences of extreme exhaustion. On June 6, 1947, he became bedfast and on July 17, 1947, at the Jewish Hospital in Cincinnati, he died from Hodgkins disease.

6. On November 6, 1946, the insured made application to the Veterans Administration for reinstatement of his National Service Life Insurance and, in reliance upon the facts which he stated therein, his application was granted, but the insurance again lapsed for failure to pay the premium due on November 16, 1946. On February 17, 1947, the insured made a second application for reinstatement, which was again granted. In both applications for reinstatement the insured represented himself to be in as good health as he was on the due date of the first premium in default; that he had not been ill, had contracted no disease and had not consulted a physician, surgeon or other practitioner for medical advice or treatment at home, hospital or elsewhere, in regard to his health since lapse of his insurance.

7. The Veterans Administration obviously relied upon the truth of the representations so made and both reinstatements of the insurance were granted in reliance upon such representations, all of which were false.

8. In view of the undisputed facts disclosed by the evidence, the conclusion seems inescapable that the representations thus made by the insured to the Veterans Administration were false and were known by him to be false when made and were so made for the fraudulent purpose of deceiving the Veterans Administration and to thereby procure reinstatement of his policy. This conclusion is not negatived by the mere fact that neither of the doctors disclosed to the veteran that he was afflicted with Hodgkins disease. Dr. Hurt disclosed it to the plaintiff, his wife, and to his brother. While his wife asserts that she did not reveal the facts of his disease to

him, it is rather significant that his brother did not so testify.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. The necessary elements of the defense of fraud are: (1) A false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) with intent to deceive and (5) with action taken in reliance upon the representation. Pence v. United States, 316 U.S. 332, 338, 62 S.Ct. 1080, 86 L.Ed. 1510.

3. The false representations made by the veteran, as set out in the foregoing Findings of Fact, were material as a matter of law. Danaher v. United States, 8 Cir., 184 F.2d 673, 675, 676; Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740; Raives v. Raives, 2 Cir., 54 F.2d 267.

4. The fact that, when the insured made the material representations referred to, he knew they were false, justifies the conclusion that his intent was to deceive the Veterans Administration. Proof of actual conscious design to defraud is not necessary. Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202; United States v. Depew, 10 Cir., 100 F.2d 725, 728; Great Northern Life Ins. Co. v. Vince, 6 Cir., 118 F.2d 232, certiorari denied 314 U.S. 637, 62 S.Ct. 71, 86 L.Ed. 511; McSweeney v. Prudential Ins. Co. of America, 4 Cir., 128 F.2d 660, certiorari denied 317 U.S. 658, 63 S.Ct. 57, 87 L.Ed. 529.

5. The fact that in March 1947 the plaintiff procured the insured to file an application for pension, which disclosed to the department of the Veterans Administration handling pension matters that the veteran was afflicted with Hodgkins disease, is unavailing to constitute notice thereof to the department of the Veterans Administration handling insurance matters, and the Government is not estopped to rely upon the fraud disclosed by the false representations made in the applications for reinstatement. United States v. Cooper, 6 Cir., 200 F.2d 954, 956.

In view of the foregoing Findings of Fact and Conclusions of Law, judgment should be entered denying the relief sought and dismissing the complaint.